St. Louis, Iron Mountain & Southern Railway Company *v.* State.

Opinion delivered October 19, 1914.

1. Railroads—switching crews—statute—reasonableness—expediency.—The act of February 20, 1913,* requiring railroads over 100 miles in length to have switching crews of six men in cities of the first and second classes, held not to make an arbitrary requirement as to the number of men required, and the courts will accept the determination of the lawmakers as to the expediency of the statute.

---

* Act 67, Page 211, Session Laws 1913.

2.  RAILROADS—STATUTES REGULATING—PUBLIC SAFETY.—The Legislature
    may pass laws as police regulations, and may specify specific acts
    of care to be observed by railroads for the safety of employees and
    of the public.

3.  CONSTITUTIONAL LAW—EXCEPTIONAL CASES—TEST OF VALIDITY.—The
    validity of a statute can not be tested by exceptional cases, for the
    lawmakers are presumed to legislate with reference to general
    conditions.

Appeal form Garland Circuit Court; *Calvin T. Cotham, Judge;* affirmed.

*E. B. Kinsworthy, R. E. Wiley* and *T. D. Crawford,* for appellants.

1.  The act in providing that it shall not apply to railroads less than one hundred miles in length, discriminates against railroads of greater length, and denies to them the equal protection of the law.  183 U. S. 79, 111; 184 U. S. 540, 562; 165 U. S. 150, 159; 124 Tenn. 1; 129 Mo. 163; 225 Mo. 561; 212 Ill. 418; 105 Minn. 256.

The reasoning of the courts in sustaining the constitutionality of the Three Brakeman Act, Act 116, Acts 1907, 86 Ark. 412, 219 U. S. 443, does not sustain the ruling of the trial court in this case.  The operation of switching loaded cars is the same in the case of a short road as in the case of a long road.  The discrimination between the two classes is arbitrary and without reasonable foundation, since, if the public safety demands this protection in the one case, it equally demands it in the other.

2.  The act is unreasonable and arbitrary.  It is shown by the evidence that in the States of Oklahoma and Louisiana, where the lines of this appellant run through as populous towns as in this State, switching is done across public crossings with two helpers with as much safety as it is done in this State with three helpers.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, *W. D. Jackson* and *Gus W. Jones,* for appellee.

1.  The act is not discriminatory because it exempts from its operation railroads less than one hundred miles

in length.   86 Ark. 412, 219 U. S. 291; 49 Ark. 325, 125 U. S. 680; 49 Ark. 291; 81 Ark. 310; 69 Ark. 521; 32 L. R. A. 857; 113 U. S. 27; 129 U. S. 29; 174 U. S. 96, 102, 103, 104; 165 U. S. 628; 170 U. S. 294.

The question is not whether the Legislature might have adopted some other classification, or whether the classification adopted is wise, but whether it is purely arbitrary and bears no legitimate relation to the purpose sought to be accomplished.   207 U. S. 354.   And every presumption will be indulged in favor of the validity of the Legislature's classification.   194 U. S. 267; 1912 D. Am. Ann. Cases, 22.

2.   There is no merit in the contention that the act is unreasonable and arbitrary and, therefore, is violative of the due process clause of the Fourteenth Amendment.

If it is a fair subject of controversy as to whether the act is reasonable and promotive of the safety of the public, that is a question for legislative determination and not for the courts.   159 Cal. 508; 89 Neb. 34; 130 S. W. 792; 175 Ind. 478; 94 N. E. 761; 86 Ark. 434.

McCULLOCH, C. J.   Appellant railway company was convicted of violating the statute (Act No. 67, Acts 1913, approved February 20, 1913), which requires all railway companies operating roads one hundred miles and over in length to use crews of six men composed of an engineer, a fireman, a foreman and three helpers, while doing switching in terminals or yards in cities of the first and second class.   The act contains four sections and reads as follows:

"An Act for the better protection and safety of the public.

"Section 1.   That no railroad company or corporation owning or operating any yards or terminals in the cities within this State, where switching, pushing or transferring of cars are made across public crossings within the city limits of the cities, shall operate their switch crew or crews with less than one engineer, a fireman, a foreman and three helpers.

"Sec 2. It being the purpose of this act to require all railroad companies or corporations who operate any yards or terminals within this State who do switching, pushing or transferring of cars across public crossings within the city limits of the cities to operate said switch crew or crews with not less than one engineer, a fireman, a foreman and three helpers, but nothing in this act shall be so construed as to prevent any railroad company or corporation from adding to or increasing their switch crew or crews beyond the number set out in this act.

"Sec. 3. The provisions of this act shall only apply to cities of the first and second class, and shall not apply to railroad companies or corporations operating railroads less than one hundred miles in length.

"Sec. 4. Any railroad company or corporation violating the provisions of this act shall be fined for each separate offense not less than fifty dollars, and each crew so illegally operated shall constitute a separate offense."

Appellant violated the terms of the statute for a day in switching cars in the city of Hot Springs, and on the trial of the case the court imposed the minimum fine. It is conceded that the terms of the act were violated, but appellant challenges its constitutionality on four grounds, namely, that the provisions with reference to the length of miles of road within the reach of the statute constitutes an unjust classification and in effect denies the equal protection of the laws to railroads one hundred miles in length; that the statute is arbitrary and unreasonable as a police regulation in requiring the specified number of employees without necessity therefor; that the act operates as an interference with interstate commerce; and lastly, that the penalty imposed is so excessive that it in effect deprives the company of the opportunity to contest its validity without subjecting itself to unreasonable penalties.

(1) The court heard the testimony of a large number of witnesses introduced by the respective parties to the litigation, and there is a wide conflict in the testimony as to whether there is any real necessity for requir-

ing more than two helpers. The witnesses introduced by appellant are its officers and employees, and those of other roads, all of them being men of wide experience in switching cars in terminals; they all testified that there was absolutely no reason for requiring more than five men in the switch crew, and that switching could be more speedily and safely done with five men than with six. On the other hand, the State introduced a number of men now engaged as switchmen in yards and they all testified that it is necessary, in order to give proper protection at crossings, to have the additional man. It is unnecessary for a statement of the conclusions as to the validity of the law to state where the preponderance of the testimony lies, it being sufficient to say that it fails to show that the Legislature had no grounds for adopting this requirement and enacting it into a statute. There appears to be some grounds for requiring the extra man in the crew to protect the public at crossings, and the requirement is not arbitrary; therefore it is our duty to accept the determination of the lawmakers as to the policy and expediency of the statute. The testimony in the case is very voluminous, but an analysis of it would serve no useful purpose; and, notwithstanding the elaborate argument made by counsel on both sides of the case, we deem it sufficient to say that every point raised is decided adversely to appellant's contention by this court, and the Supreme Court of the United States, in the case of *Chicago, R. I. & P. Ry. Co.* v. *State,* 86 Ark. 412, and 219 U. S. 453. The case cited involved the constitutionality of the statute requiring railway companies, whose line or lines are fifty miles or more in length, to equip freight trains consisting of twenty-five cars or more, with crews composed of an engineer, a fireman, a conductor and three brakemen. There was in that case, as in this, a wide conflict in the testimony as to the necessity for and justice of such law; but both this court and the Supreme Court of the United States held in effect that the lawmakers were the judges of the policy and expediency and necessity for the law, it not being shown that it was entirely

arbitrary and without foundation. The proof in the present case varies from that in the other case only in degrees, and to hold that this act is invalid would be a distinct departure from the principles announced in the former case.

(2)   Learned counsel for appellant contend that the only reason stated by the State's witnesses why the provisions of the statute are necessary is that flying or drop switches at crossings can not be safely made without the assistance of the third helper, and that this reason is unsound because the evidence adduced by appellant shows that such method of switching at crossings is expressly forbidden by the rules of the companies.   Conceding that this is the only reason stated by the witnesses, it does not follow that the existence of the rules of the companies forbidding such methods of switching obviates the necessity for requiring the employment of the third helper. There is testimony tending to show that the rule is habitually violated, with the knowledge of the superior officers of the railway companies, and the lawmakers had the right to take those facts into consideration in legislating for the protection of the public, or even for the protection of employees who were permitted to habitually violate the rules.   Questions of assumed risk and contributory negligence do not necessarily enter into the consideration of questions of expediency in enacting statutes for the protection of human life.   The lawmakers can disregard those questions entirely and, as a police regulation, prescribe specific acts of care to be observed for the safety of employees or of the public.

It is insisted that the classification upheld in the former case does not justify the classification prescribed in the present act for the reason that the conditions are different, the former being a classification with respect to crews of trains while operating out on the road, whereas the present statute only applies to switching in the yards or terminals.   We are of the opinion that the reason found in the other case for that classification applies with equal force to the present case, for it may be

seen that there is more work demanded in switching cars on a road many miles in length, where the trains are run more frequently and consist of more cars, than on a short line doing perhaps only a local business.

(3) Attention is called to one or more situations in the State which show the unreasonableness of the classification by reason of the fact that, on account of the peculiar conditions, short roads do as much switching as longer ones. The principal instance cited is at Helena, where a road only a few miles in length, located entirely within the corporate limits of the city of Helena, does a large amount of switching for connecting trunk lines. The validity of the statute can not be thus tested by exceptional cases, for the lawmakers are presumed to legislate with reference to general conditions and not to exceptional cases, and this, they have the power to do.

"It is almost impossible, in some matters, to foresee and provide for every imaginable and exceptional case," said the Supreme Court of the United States, in the case of *Ozan Lumber Co.* v. *Union County National Bank*, 207 U. S. 251, "and the Legislature ought not to be required to do so at the risk of having its legislation declared void, although appropriate and proper upon the general subject upon which such legislation is to act, so long as there is no substantial and fair ground to say that the statute makes an unreasonable and unfounded general classification, and thereby denies to any person the equal protection of the laws. In a classification for governmental purposes, there can not be an exact conclusion or inclusion of persons and things."

In view of the elaborate discussion of the questions by this court, and by the Supreme Court of the United States, in the case which we have referred to as decisive of all the questions involved, a further discussion is unnecessary at this time. We find that appellant's attack upon the validity of the act is unfounded.

The judgment is therefore affirmed.