UNITED STATES v. MARINE ENGINEERS' BENEFICIAL ASS'N NO. 38 et al.

(District Court, W. D. Washington, N. D.   July 27, 1921.)

No. 254–E.

1. **Equity  ☞150(2)—Bill for injunction against unrelated defendants multifarious.**

    A bill against a number of labor organizations to enjoin alleged unlawful interference with complainant's property and business *held* multifarious, where no conspiracy or concert of action between defendants is alleged.

2. **Injunction  ☞118(1)—Pleadings must clearly allege all necessary facts.**

    To authorize the granting of an injunction, the facts entitling the complainant to such relief must be clearly and positively alleged in the bill, and affidavits filed in its support cannot supply the omission.

3. **Injunction  ☞95—Not granted for protection against personal assault.**

    A court of equity may not grant an injunction to restrain personal assaults, where no injury to property or property rights is threatened; there being an adequate remedy at law in such cases.

In Equity. Suit by the United States against the Marine Engineers' Beneficial Association No. 38 and others. On motions to dismiss bill. Granted.

Robert C. Saunders, U. S. Atty., and F. C. Reagan, Asst. U. S. Atty., both of Seattle, Wash.

Turner, Nuzum & Nuzum, of Spokane, Wash., and Daniel Landon, George A. Custer, William Martin, and G. E. Steiner, all of Seattle, Wash., for defendants.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

NETERER, District Judge. The plaintiff as the owner, charterer, and operator of a fleet of passenger and freight vessels, acting through the United States Shipping Board, represented by the Shipping Board Emergency Fleet Corporation, its agent, under the Act of September 7, 1916 (Comp. St. §§ 8146a–8146r), and stating that it controls, through its said representative, wharf and dock facilities in the seaport of the port of Seattle, and certain shipyard plants in said city, brings this action alleging corporate entity and association relation of the six different defendants, and that the plaintiff is operating a fleet of vessels for the purpose of establishing a merchant marine in the United States; that it is necessary for the re-establishment and conduct of the business of said merchant marine that the plaintiff and its agents, the United States Shipping Board Emergency Fleet Corporation, and any other agent or agents to whom the vessels of the plaintiff are allocated, chartered, or assigned, for operation by contract, "which in general terms provides that such agent agrees to man, equip, victual, and supply such vessels, and to pay for the account of the plaintiff the costs thereof and all other costs and expenses incident to the management, operation, and business of such vessels, be able to use freely, fully, and without hindrance or obstruction the said properties, as well as avail itself of the services of all persons entering into its service in the operation of its merchant marine"; and that the port of Seattle is a seaport at which there arrive and from which there depart a great number of vessels of the plaintiff for the purpose of discharging and lading cargo, and that the plaintiff has on the date of the filing of the bill of complaint in said harbor, either just arrived or ready to depart, "at least ten vessels of its merchant marine fleet * * *"; that prior to May 1, 1921, the plaintiff, through its said agents, notified the defendants, "and each and all of them, that the then existing scale of wages paid to the employees of various vessels operated by the plaintiff, as aforesaid, would be reduced 15 per cent.," and that on May 1 the individual members of the defendant corporations and associations "walked out and left the vessels of the plaintiff, and refused to work for the plaintiff upon its terms and conditions * * *"; that "each and all of the defendants have ever since said May 1, 1921, been obstructing and hindering the plaintiff and its agents in the operation of its ships and its plans * * *; that the defendants and each and all of them have been guilty of threats, intimidation, and violence against all persons able and willing to work for the plaintiff and its agents upon its terms, and that they have picketed, paralyzed, and otherwise interfered with and obstructed the plaintiff and its agents in their efforts to keep said vessels of plaintiff's merchant marine from sailing * * *; that on and ever since the said 1st day of May, 1921, each and all the defendants and members of the various corporations, volunteer associations, and organizations named as defendants herein, have trespassed upon the property of the plaintiff herein, and upon its vessels; that they have deliberately and purposely intimidated, threatened, and assaulted citizens of the United States of America who desire to enter the employ of the plaintiff for the purpose of manning and operating its vessels aforesaid * * *; that the plaintiff, in the

operation of its vessels, gives preference to native-born Americans and/or citizens of the United States; that the defendant Sailors' Union of the Pacific, Seattle Branch, a corporation, is largely composed of aliens and/or naturalized citizens of the United States, which union has in effect a so-called 'list system' by which the plaintiff is precluded from giving employment to native-born American citizens until after aliens who are members of this union and precede them on the list have been employed; that each and all of the defendants and pickets stationed around plaintiff's property and vessels, whom plaintiff alleges to be members of the various corporations and organizations, * * * are arrogant, impudent, and discourteous * * *; that the shippers, customers, forwarders, importers, and exporters of the plaintiff are being driven away deliberately by the defendants and each and all of them as aforesaid * * *; that the officers and agents of the various organizations, unions, and corporations named as defendants herein have openly admitted that they are no longer in control of their members, and state that, if any violence and trespassing occurs, they are no longer able to control the members of the various organizations * * *; that the defendants are insolvent, and are not able to respond to the plaintiff for damages, * * *; that the sole and only cause of action of the defendants and each and every one of them, as alleged herein, is that the plaintiff has declined to pay a scale of wages fixed and demanded by the defendants and each and every one of them * * *"—and then alleges damage to the plaintiff and prays for injunction.

The defendants each appear separately. The Marine Firemen, Oilers, and Water Tenders' Union of the Pacific, Seattle Branch, appearing specially for the purposes of the motion, moves to dismiss, stating that it is impleaded as a corporation organized under the laws of Washington, but is a branch organization, organized by the Marine Firemen, Oilers, and Water Tenders' Union of the Pacific, a corporation under the laws of California, and this branch is maintained by the members living in Seattle for their mutual help and protection, and that the parent corporation is a citizen of California and not subject to the jurisdiction of this court. The Marine Engineers' Beneficial Association moves to dismiss on the ground that the action is not brought in the name of the real party in interest, and in the alternative demurs on the ground of a misjoinder of parties plaintiff and defendant, and that the bill of complaint does not state a cause of action, and further answers denying all of the equities of the bill. The Masters, Mates, and Pilots of the Pacific answer, denying all of the equities of the bill, and making a complete denial of the acts charged against the said defendant. The Sailors' Union of the Pacific, Seattle Branch, and P. V. Gill, secretary, specially appear for the purpose of the motion, saying that it is impleaded as a corporation, but is in fact a voluntary association. The Marine Cooks and Stewards' Association of the Pacific and John Norkgauer, secretary, appear specially, and say that they are impleaded as a corporation, and in fact are not a corporation, but a voluntary association. The Neptune Association appears and moves that the restraining order issued be dissolved, and files a number of

affidavits denying all acts of violence, intimidation, arrogance, or charges made.

Considering the contention of the defendants in so far as material to a determination of the issue presented, it may be said that the plaintiff has a right to prosecute an action where interstate commerce or the carrying of United States mails is interfered with or National Highways are obstructed. In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092. While the Supreme Court did say the scope and purpose of the bill in that case was only to restrain forcible obstructions on the highway along which interstate commerce travels and the mails are carried, and in the exercise of these powers, it is competent for the nation to remove all obstructions on highways, natural or artificial, to the passage of interstate commerce and the carrying of the mails. The bill of complaint in this case is indefinite, in that no direct charge of obstruction of highways or of carrying United States mails or interstate commerce appears, nor physical interference with docks, wharves, or vessels, or cargo, or passengers, to or from such properties, nor threatened interference. But from the view taken of this case it is unnecessary to discuss that matter any further.

The bill of complaint states that the United States is the real party in interest, and it is asserted at bar that the Fleet Corporation was acting in a representative capacity predicated upon the Marine Act of September, 1916, and that the Fleet Corporation is merely an arm of the government. Sloan Shipyards v. U. S. (D. C.) 268 Fed. 624. The status of the Fleet Corporation since the amendment of section 12 of the Merchant Marine Act (41 Stat. 993; section 8146eee, Comp. Stat.), continuing the Fleet Corporation with authority to operate vessels, unless otherwise directed by law, until all the vessels are sold, may give the Fleet Corporation a status other than it bore in the construction of ships in the war emergency, and the relation it sustained under the facts stated in the complaint in the Sloan Case; and it may be said in this connection that it is feasible for the Fleet Corporation to act as a corporate entity in the operation of vessels and be differentiated from the status as an arm of the government in the construction of ships under the emergency of war.

The motions of the defendants under special appearances, impleaded as corporations, who are in fact voluntary associations, are not controverted. The allegation of corporate existence is an issuable fact. May a court enter a decree of injunction against a voluntary association, sued as a corporation? The suggestion that under equity rules 19 and 38 (198 Fed. xxiii, xxix, 115 C. C. A. xxiii, xxix), in furtherance of justice, the court should permit the pleadings to be amended and proceed against the voluntary association. Permission to amend or file supplemental pleading may be granted, but may such amendment be by the court considered as made, and may it grant an injunction against a voluntary association not impleaded? Parties have a right to be heard, and the mere fact that the secretary named as of the corporation is the secretary of the voluntary association—does that change the status before the court of the association? Would not a decree entered against the voluntary association in such case be brutum ful-

277 F.—53

men? The suggestion that consent of the defendants to a continuance of a hearing for a motion for temporary injunction does not change the status.

[1] The contention that the bill is multifarious, I think, is well taken.. The same cause of action is stated against six different defendants, each from the averments acting independently, and, if so acting, may not be joined in one action.   Because several parties, acting ·independently, may `wrong another by conduct which may have the same resultant effect, does. not give such other party a right to sue all of the wrongdoers so acting in one action.· Equity rule 38 does not so authorize, and this seems. to be sustained by McCabe v. A. T. & S. F. Ry. Co., 235 U. S. 151, 35 Sup. Ct. 69, 59 L. Ed. 169.   This rule does not apply to individual wrongdoers.   Individual wrongdoers may be sued collectively, when they combine by concerted action to do the unlawful thing, or a lawful thing in an unlawful manner.   Alaska Steamship Co. v. International Longshoremen's Association (D. C.) 236 Fed. 964.   And the term. "individual" applies to corporations and voluntary associations.

[2] Plaintiff admits that no conspiracy ·is directly charged, but asserts that from the bill of complaint and affidavits it appears "that such confederation and conspiracy does exist."   The affidavits may not be·taken as part of or supplemental to the bill of complaint.   The sole function of the affidavits is to support the equities claimed in the bill and not as averments of equities.   The averments of the bill must be most strongly taken against the pleader, but the most liberal interpretation does not disclose an averment of unity of movement, preconceived plan, or concert of action, but, if the affidavits filed are considered, all of which have been read since this case was submitted, it appears that some parties had assembled at the Skinner & Eddy yard, but no violence is charged; that several assaults were committed on the streets of the city of Seattle, the identity of the parties assembling or making the assaults, or source from which they come, or authority under which they acted, does not appear, except as to. the Sailors' Union, and on one occasion one party belonging to the Neptune Association, who afterwards went to the Sailors' Hall; but there is no averment which would indicate that this party was acting pursuant to any authority, plan, or design on the part of this association. · The equities must be clearly shown in the bill of complaint (Joyce on Injunctions, vol. 1, §§ 21 and 109;  High on Injunctions, vol. 1, § 34), and not left to inference (Andrew Warsop v. City of Hastings, 22 Minn. 437;  Hoyt v. Braden, 27 Minn. 490, 8 N. W. 591;  Perkins v. Collins, 3 N. J. Eq. 482;  Philhower v. Todd, 11 N. J. Eq. 54.   In the Minnesota case the court (22 Minn. at page 438) said:

"It is well settled that, in all cases where equitable relief is sought through the extraordinary remedy of an injunction. the facts entitling the party to such relief must be clearly and positively alleged and shown.   It is not enough that their existence may be inferred or spelled out from the averments in the complaint."

[3] Since an amended or supplemental bill of complaint must be filed, it may not be amiss to say that equity only extends its strong

arm. when there is no adequate remedy at law. For assaults upon streets of the city, where there is no physical interference with property or property rights, or threatened interference, a complete remedy at law exists. The criminal courts are open, and a resort to a court of equity is not necessary. A court of equity will not undertake to police a city or state. Vassar College v. Loose-Wiles Biscuit Co. (D. C.) 197 Fed. 982; Francis v. Flinn, 118 U. S. 385, 6 Sup. Ct. 1148, 30 L. Ed. 165; In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402; Pug. Sd. Traction Lt. & Power Co. v. Whitley (D. C.) 243 Fed. 945, in which case this court said at page 949:

"A line of demarcation must be made between the conduct of an individual or association of individuals engaged in a specific purpose or object, and the conduct of a large number of persons, sometimes denominated, and in this complaint referred to, as a 'mob.' As against the one application may be made to the court, and, in the exercise of sound discretion be afforded relief. But the other clearly comes within the police power of the city, state, or nation."

Justice Field, in Francis v. Flynn, supra, 118 U. S. at page 389, 6 Sup. Ct. 1150, 30 L. Ed. 165, said:

"If a court of equity could interfere and use its remedy of injunction in such cases, it would draw to itself the greater part of litigation properly belonging to courts of law."

In this case, plaintiff, the owner of a steam pilot boat on which were employed branch pilots duly licensed, charged conspiracy to destroy his business and property by publications in newspapers, by suits seeking injunction, and in divers other ways, and sought injunction restraining defendants from interfering with his rights, pilot boat, and business. The Supreme Court held he had remedies at law for each and all of the acts complained of. In Re Sawyer, supra, Justice Gray said:

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property."

The right to use vessels, and to use them regularly and expeditiously, and wharves or docks or yards, is a property right, the use of which may not be denied the owner, and to preserve such right a court of equity will afford relief upon a proper showing of fact. Decision upon the issues here presented was heretofore especially reserved by the court until this consideration.

The motion to dismiss is granted. Permission, however, is given plaintiff to amend or file a supplemental bill of complaint as it may elect.