## MISSOURI PACIFIC RAILROAD COMPANY *v.* NORWOOD, ATTORNEY GENERAL OF ARKANSAS, ET AL.

No. 193. Argued March 10, 11, 1931.—Decided April 13, 1931.

Mr. *Edward J. White,* with whom Mr. *Thos. B. Pryor* was on the brief, for appellant.

Mr. *Donald R. Richberg,* with whom Messrs. *Hal L. Norwood,* Attorney General of Arkansas, *Joe Joiner, Chester Holland,* and *W. D. Jackson* were on the brief, for appellees.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The company sued the attorney general and the prosecuting attorneys of two circuits of Arkansas to enjoin the enforcement of statutes of that State regulating freight train crews and switching crews upon the claim that they are repugnant to the Constitution and laws of the United States. On the complaint and supporting affidavits the plaintiff applied for a temporary injunction. Defendants moved to dismiss. The court, consisting of a circuit judge and two district judges, held the complaint insufficient to show any ground for relief and dismissed the case. 42 F. (2d) 765.

The statutes so assailed are Laws, 1907, Act 116, and Laws, 1913, Act 67 (§§ 8577–8579 and 8583–8586, Crawford & Moses' Digest, 1921) which so far as here material

are printed in the margin.[1]   The earlier Act requires rail-road carriers whose lines are not less than 50 miles in length to have not less than three brakemen in every crew of freight trains of 25 cars or more.   The later Act requires not less than three helpers in switch crews in yards in cities of the first and second class operated by companies having lines of 100 miles or more.

The complaint asserts that each of these Acts violates the commerce clause of the Federal Constitution and the

---

[1] Arkansas Laws, 1907, Act 116, provides:

"Section 1. No railroad company . . . owning or operating any line or lines of railroad in this State, and engaged in the transportation of freight over its line or lines shall equip any of its said freight trains with a crew consisting of less than an engineer, a fireman, a conductor and three brakemen, . . .

"Section 2. This Act shall not apply to any railroad company . . . whose line or lines are less than fifty miles in length, nor to any railroad in this State, regardless of the length of the said lines, where said freight train so operated shall consist of less than twenty-five cars . . .

"Section 3. Any railroad company . . . violating any of the provisions of this Act shall be fined for each offense not less than one hundred dollars nor more than five hundred dollars, and each freight train so illegally run shall constitute a separate offense. . . ."

Arkansas Laws, 1913, Act 67, provides:

"Section 1. That no railroad company . . . owning or operating any yards or terminals in the cities within this State, where switching, pushing or transferring of cars are made across public crossings within the city limits of the cities shall operate their switch . . . crews with less than one engineer, a fireman, a foreman and three helpers.

"Section 3. The provisions of this Act shall only apply to cities of the first and second class and shall not apply to railroad companies or corporations operating railroads less than one hundred miles in length.

"Section 4. Any railroad company or corporation violating the provisions of this Act shall be fined for each separate offense not less than fifty dollars and each crew so illegally operated shall constitute a separate offense."

due process and equal protection clauses of the Fourteenth Amendment and is repugnant to the Interstate Commerce Act as amended in 1920 [2] and to the Railway Labor Act.[3] But they have been held valid by this court as against the claim of repugnancy to these clauses of the Constitution. See *Chicago, R. I. & Pac. Ry. Co.* v. *Arkansas,* 219 U. S. 453, 459, 465, affirming 86 Ark. 412; 111 S. W. 456, as to the Act of 1907, and *St. Louis, I. M. & S. Ry. Co.* v. *Arkansas,* 240 U. S. 518, affirming 114 Ark. 486; 170 S. W. 580, as to the Act of 1913.

The first of these cases was decided in 1911. The court held that the Act of 1907 is not a regulation of interstate commerce and that upon its face it must be taken as having been enacted in aid of, and for the protection of those engaged in, such commerce. It said that Congress might have taken entire charge of the subject, but that it had not done so and had not enacted regulations in respect of the number of employees to whom might be committed the management of interstate trains and that until it does the statutes of the State, not in their nature arbitrary, must control. The court found that, while under the evidence there was admittedly room for controversy as to whether the statute was necessary, it could not be said that it was so unreasonable as to justify the court in adjudging it an arbitrary exercise of power. And it held that, being applicable alike to all belonging to the same class, there was no basis for the contention that it denied the company equal protection of the laws. The principles governing that decision were followed in the later case, decided in 1916, which upheld the Act of 1913. Both Acts were sustained as valid exertions of police power for the promotion of safety of employees and others.

The plaintiff says that, since these decisions, Congress has occupied the field and has delegated to the Commis-

---

[2] U. S. C., Tit. 49.

[3] U. S. C., Tit. 45, §§ 151–163.

sion and Labor Board full authority over the subject and that the state laws under consideration are repugnant to the comprehensive scheme of federal regulation prescribed by the Interstate Commerce Act as amended and conflict with §§ 1 (10) and (21), 13, 15 and 15a thereof and with the spirit of the Railway Labor Act of 1926.

It maintains that the allegations of the complaint together with the facts set forth in the affidavits show that, when applied to operating conditions on its lines in Arkansas, these state laws are arbitrary and violative of the Federal Constitution and laws. But the affidavits filed in support of the application for a temporary injunction may not be considered in determining whether the complaint states facts sufficient to constitute ground for relief. *Leo* v. *Union Pac. Ry. Co.*, 17 Fed. 273. *United States* v. *Marine Engineers' Assn.*, 277 Fed. 830, 834. *McGregor* v. *Great Northern R. Co.*, 42 N. D. 269, 280; 172 N. W. 841.

The substance of the pertinent allegations of the complaint follows:

Present railroad operating conditions on plaintiff's railroad in Arkansas and elsewhere, and on railroads generally in this country, differ from those that existed in 1907 and 1913 when these laws were passed. Roads and equipment have been so improved that longer and heaver trains may be operated more safely now than much smaller trains could then be operated. It is standard practice of railroads " wherever the density of traffic is sufficient, except in the State of Arkansas, to operate freight and passenger trains and switch engines with crews consisting of less than the extra switchmen [meaning one less than required by the 1913 Act] and extra brakemen [meaning one less than required by the 1907 Act] provided by the Arkansas laws."

Freight trains and switch engines are safely operated on lines similar to those of plaintiff " wherever the traffic

and circumstances make such operation advisable, without such extra switchmen and extra brakemen." By increasing lengths of their freight trains, the plaintiff and other railroads in States " where such extra brakemen and extra switchmen are not [by law] required " have been able to effect great economies. But by the Arkansas laws plaintiff is compelled there to employ more than the standard crew and to pay for services and time not needed or used for the operation of its freight trains.

The standard agreement between plaintiff and the Brotherhood of Railroad Trainmen provides for a switch crew consisting of a foreman and two helpers and " also provides for a  .  .  .  freight train crew, in through and irregular freight service, of a conductor and two brakemen." Other railroads have similar agreements with the Brotherhood " with the exception of the service in States with laws similar to the above laws of the State of Arkansas."

And it is alleged that, if plaintiff were permitted to operate its freight trains without the extra brakemen required by the Act of 1907, its expenses would be reduced by $350,000 per year; and, if permitted to operate its switch engines without the extra helper required by the Act of 1913, its expenses would be reduced $250,000 per year.

The complaint contains much by way of argument, assertions as to questions of law together with inferences and conclusions of the pleader as to matters of fact. These are not deemed to be admitted by motion to dismiss. *Equitable Life Assurance Society* v. *Brown*, 213 U. S. 25, 43. *Southern Ry. Co.* v. *King*, 217 U. S. 524, 536. *Pierce Oil Corp.* v. *Hope*, 248 U. S. 498, 500. The state laws are presumed valid. Moreover, in the cases here decided they were held not repugnant to the commerce clause of the Constitution or the due process or equal protection clause

of the Fourteenth Amendment. The burden is on the plaintiff by candid and direct allegations to set forth in its complaint facts sufficient plainly to show the asserted invalidity. *Aetna Insurance Co.* v. *Hyde*, 275 U. S. 440. 447, and cases there cited. *N. O. Public Service* v. *New Orleans*, 281 U. S. 682, 686. *Beaumont, S. L. & W. Ry.* v. *United States*, 282 U. S. 74, 88.

There is no showing that the dangers against which these laws were intended to safeguard employees and the public no longer exist or have been lessened by the improvements in road and equipment or by the changes in operating conditions there described. And, for aught that appears from the facts that are alleged, the same or greater need may now exist for the specified number of brakemen and helpers in freight train and switching crews. It is not made to appear that the expense of complying with the state laws is now relatively more burdensome than formerly. Greater train loading tends to lessen operating expenses for brakemen. There is no statement as to present efficiency of switching crews compared with that when the 1913 Act was passed, but it reasonably may be inferred that larger cars and heavier loading of today make for a lower switching expense per car or ton. While cost of complying with state laws enacted to promote safety is an element properly to be taken into account in determining whether such laws are arbitrary and repugnant to the due process clause of the Fourteenth Amendment, (*Lehigh Valley R. Co.* v. *Commissioners*, 278 U. S. 24, 34; *Oregon R. R. & N. Co.* v. *Fairchild*, 224 U. S. 510, 529), there is nothing alleged in that respect which is sufficient to distinguish this case from those in which we have upheld the laws in question. And the claim that " standard " crews are generally employed by the railroads of the United States is substantially impaired by the qualified form of the allegations and also by the fact,

which we judicially notice, that other States have laws somewhat similar to the Arkansas Act in question.[4] It is clear that, so far as constitutionality is concerned, the facts alleged are not sufficient to distinguish this case from those in which this court has sustained these laws.

Has Congress prescribed, or authorized the Interstate Commerce Commission to regulate, the number of brakemen to be employed for the operation of freight trains or the number of helpers to be included in switching crews?

In the absence of a clearly expressed purpose so to do Congress will not be held to have intended to prevent the exertion of the police power of the States for the regulation of the number of men to be employed in such crews. *Reid* v. *Colorado,* 187 U. S. 137, 148. *Savage* v. *Jones,* 225 U. S. 501, 533. *Napier* v. *Atlantic Coast Line,* 272 U. S. 605, 611. Plaintiff, while not claiming the Interstate Commerce Act in terms purports to cover that sub-

---

[4] Arizona Revised Code (1928) §§ 649–651. (Laws 1912, c. 16.)

California Laws 1915, c. 501, amending c. 49, 1911, as amended 1913, c. 168.

Maine Revised Statutes (1930), c. 64, § 60. (Laws 1842, c. 9, § 3.)

Mississippi Laws 1930, c. 219, amending c. 170, 1914.

Nebraska Compiled Statutes (1929), c. 74, §§ 519–524. (Laws 1909, p. 405, 1913, p. 157.)

Nevada Revised Laws (1919), §§ 3588–3596. (Stats. 1913, p. 62, repealing Act of March 8, 1909, and Act of February 21, 1911, as amended March 28, 1911.)

New York Consolidated Laws, c. 50, § 54a. (Laws 1913, c. 146, as amended by Laws 1921, c. 290.)

North Dakota Civil Code, §§ 4667a1–4. (Laws 1919, c. 169.)

Ohio Throckmorton's Annotated Code (1930), §§ 12553–12557 (3).

Oregon Code (1930), Tit. 62, §§ 1401–1403. (Laws 1913, c. 162.)

Texas Revised Civil Statutes (1925), Art. 6380. (Acts 1909, p. 179.)

Washington Pierce's Code (1929), §§ 5674–5678. (Laws 1911, p. 650.)

Wisconsin Statutes (1929), §§ 192.25 (1907, c. 402) and 192.26 (1913, c. 63).

ject, insists that the Act does give the Commission juris-
diction over freight train and switching crews and so ex-
cludes the States from that field. It calls attention to a
number of provisions of the Act [5] and maintains that under
them the Commission is empowered to regulate the " prac-
tice " of carriers in respect of the " supply of trains " to be
provided by any carrier. But, assuming that the Act does
so authorize regulation in respect of such practice and sup-
ply, it is clear that the delegation of power would not
include the regulation of the number of brakemen or
helpers. The Act uses the word " practice " in connection
with the fixing of rates to be charged and prescribing of
service to be rendered by the carriers, but these matters
differ widely in kind from the subject covered by the
Arkansas laws. That word is deemed to apply only to
acts or things belonging to the same class as those meant
by the words of the law that are associated with it. *Bal-
timore & O. R. Co.* v. *United States,* 277 U. S. 291, 300.
The Act does not use that word in respect of any subject,
that reasonably may be thought similar to or classified
with the regulation of the number of men to be employed
in such crews. And it is also clear that there is nothing in
the phrase "supply of trains" or in the purpose of the
Act to suggest that by it Congress intended to supersede
state laws like those under consideration. The plaintiff
further supports its contention by the claim that the Com-
mission is authorized to regulate the expenditures of car-
riers. That claim is based on the provisions of the Act
empowering the Commission to regulate rates to be
charged and divisions of joint rates and to ascertain rate
levels that will yield the fair return provided for. But
manifestly there is no similarity between determining
what items of expense properly are to be taken into ac-
count in calculations made for such purposes and in the

---

[5] §§ 1 (3) (10) (11) (12) (13) (14) (21), 13, 15, 15a.

prescribing of the number of employees or the compensation to be paid them. We think it very clear that Congress has not prescribed or empowered the Commission to fix the number of men to be employed in train or switching crews.

No analysis or discussion of the provisions of the Railway Labor Act of 1926 is necessary to show that it does not conflict with the Arkansas statutes under consideration.

*Decree affirmed.*