Horace BANTA, Trustee of the Property of The New Jersey and New York Railroad Company, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

Civ. A. 873-56.

United States District Court
D. New Jersey.
May 13, 1957.

Justin W. Seymour, Orange, N. J., for plaintiff.

U. S. Atty. B. Franklin Taylor, Jr., I. C. C. Office of the General Counsel, Washington, D. C., for defendant.

Before GOODRICH, Circuit Judge, and WILLIAM F. SMITH and MEANEY, District Judges.

GOODRICH, Circuit Judge.

The plaintiff brings this action for a decree "suspending, enjoining, annulling and setting * * * aside" an order of the Interstate Commerce Commission and for an order directing the Commission to grant affirmative relief. It is an

appeal from a Commission order to a three-judge district court pursuant to 28 U.S.C. §§ 1336, 2284 and 2321–2325.

The factual story is short and undisputed. Plaintiff is trustee of The New Jersey and New York Railroad Company which has been in a Section 77 reorganization proceeding, 11 U.S.C.A. § 205, since June 30, 1938, and is still there. Its overall operations are being conducted at a financial loss. The plaintiff, as trustee, wishes to discontinue one weekday passenger train called number 613. This train operates westbound from Jersey City, N. J. to Spring Valley, N. Y. A daily average of customers on 613 is 162 passengers of whom 33 are nonrevenue and 36 are intrastate passengers. The trustee desires to add some coaches to another train which leaves Jersey City a little later in the afternoon than Train 613 thus, he says, adequately caring for the service now provided and saving the money-losing railroad something more than $30,000 a year.

Plaintiff first went to the Board of Public Utility Commissioners of New Jersey and made application to discontinue the operation of this Train 613 within the State of New Jersey. The New Jersey board denied the application. This denial was affirmed by the appellate division of the Superior Court of New Jersey. In re New Jersey & New York R. Co., 1952, 23 N.J.Super. 1, 92 A.2d 515. The Supreme Court of New Jersey affirmed the Superior Court. 1953, 12 N.J. 281, 96 A.2d 526. The Supreme Court of the United States dismissed the appeal from the Supreme Court of New Jersey for want of a substantial federal question. New Jersey & N. Y. R. Co. v. Board of Public Utility Com'rs, 1953, 346 U.S. 868, 74 S.Ct. 123, 98 L.Ed. 378.

Next the plaintiff went to the Interstate Commerce Commission for help and met with the same lack of success that he had before the New Jersey Board and the New Jersey courts. 299 I.C.C. 41 (1956). He then came to this Court. We are not going to help him either but in deciding so are moved to say that plaintiff has made a very able argument and got all there is to be had from a difficult case.

■ It is agreed between the parties that the Interstate Commerce Commission has no authority to allow a railroad to discontinue an individual interstate train. Palmer v. Commonwealth of Massachusetts, 1939, 308 U.S. 79, 60 S. Ct. 34, 84 L.Ed. 93. So the plaintiff is compelled to proceed indirectly, pressing the novel contention that the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., is violated by the state-required operation of this particular train.

The plaintiff first turns to Section 13 (3) and (4) of the statute. Here they are:

§ 13(3) "Investigation involving State regulations; conference of State and interstate commissions.

"Whenever in any investigation under the provisions of this chapter, or in any investigation instituted upon petition of the carrier concerned, which petition is hereby authorized to be filed, there shall be brought in issue any rate, fare, charge, classification, regulation, or practice, made or imposed by authority of any State, the commission, before proceeding to hear and dispose of such issue, shall cause the State or States interested to be notified of the proceeding. The commission may confer with the authorities of any State having regulatory jurisdiction over the class of persons and corporations subject to this chapter or chapter 12 of this title with respect to the relationship between rate structures and practices of carriers subject to the jurisdiction of such State bodies and of the commission; and to that end is authorized and empowered, under rules to be prescribed by it, and which may be modified from time to time, to hold joint hearings with any such State regulating bodies on any matters wherein the commission is empowered to act and where the rate-making authority of a State is or may be affected by the action taken.

by the commission. The commission is also authorized to avail itself of the cooperation, services, records, and facilities of such State authorities in the enforcement of any provision of this chapter or chapter 12 of this title."

§ 13(4) "Duty of Commission where State regulations result in discrimination.

"Whenever in any such investigation the commission, after full hearing, finds that any such rate, fare, charge, classification, regulation, or practice causes any undue or unreasonable advantage, preference, or prejudice as between persons or localities in intrastate commerce on the one hand and interstate or foreign commerce on the other hand, or any undue, unreasonable, or unjust discrimination against interstate or foreign commerce, which is forbidden and declared to be unlawful, it shall prescribe the rate, fare, or charge, or the maximum or minimum, or maximum and minimum, thereafter to be charged, and the classification, regulation, or practice thereafter to be observed, in such manner as, in its judgment, will remove such advantage, preference, prejudice, or discrimination. Such rates, fares, charges, classifications, regulations, and practices shall be observed while in effect by the carriers parties to such proceeding affected thereby, the law of any State or the decision or order of any State authority to the contrary notwithstanding." 49 U.S.C.A. § 13(3, 4).

The Commission says that this section does not give it jurisdiction in such a case as this. Plaintiff says that is incorrect and says that the Supreme Court of the United States so held in Alabama Public Service Comm. v. Southern Ry. Co., 1951, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002. In that case a three-judge federal district court had enjoined enforcement of an order of the Alabama Public Service Commission. There had been no appeal to the state courts from

that commission's order. In the course of the discussion in footnote 9 on pages 346–347, of 341 U.S., on page 767 of 71 S.Ct., Mr. Chief Justice Vinson, who wrote the opinion for the Court, said:

"9. As the jurisdiction of the Interstate Commerce Commission under 49 U.S.C. § 13(4), has not been invoked for decision as to whether the continuance of this intrastate service constitutes an undue discrimination against interstate commerce we cannot, in this proceeding, consider any impact the order of the Alabama Public Service Commission might have on interstate commerce. Western & Atlantic R. Co. v. Georgia Pub. Serv. Comm., 1925, 267 U.S. 493 [45 S.Ct. 409, 69 L.Ed. 753], and cases cited therein."

We think the reliance by the plaintiff upon this footnote is misplaced. The issue before the Court was not the jurisdiction of the Interstate Commerce Commission but the propriety of exercise of authority by a federal court enjoining enforcement of a state regulatory order. The cases cited in the footnote are instances where the Commission admittedly had jurisdiction.

Nor do we find in the plaintiff's recital of legislative history anything to bolster his case. Indeed, the legislative history cited by the Interstate Commerce Commission shows pretty clearly, we think, that the attention of the Congress was upon rates and rate discrimination and that it was following up the decision in the Shreveport Rate Case. (Houston, E. & W. T. Ry. Co. v. United States, 1914, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341), which had been decided not long before. For a summary of legislative history of Section 13(3) and (4) see Missouri Pac. R. Co. v. Norwood, D.C. W.D.Ark.1930, 42 F.2d 765, affirmed 1931, 283 U.S. 249, 51 S.Ct. 458, 75 L.Ed. 1010; Id., 1933, 290 U.S. 600, 54 S.Ct. 227, 78 L.Ed. 527.

The plaintiff's argument really gets down to an insistence that the running or nonrunning of this train is a

"regulatión" or "practice" "made or imposed by the authority of any State." The Supreme Court has warned us about the word "practice" as used in this Act:

"The word 'practice,' considered generally and without regard to context, is not capable of useful construction. If broadly used, it would cover everything carriers are accustomed to do. Its meaning varies so widely and depends so much upon the connection in which it is used that Congress will be deemed to have intended to confine its application to acts or things belonging to the same general class as those meant by the words associated with it." Baltimore & O. R. Co. v. United States, 1928, 277 U.S. 291, 299–300, 48 S.Ct. 520, 522, 72 L.Ed. 885.

We think that if the paragraphs set out above are read in all their language, without pulling words out of context, the Commission was right in saying that Section 13 gave it no authority to do what the plaintiff asks.

The conclusion is fortified by some applications of the legislative language by the courts. Thus it has been held that a state imposed full crew requirement was not a "regulation" or "practice" within § 13(3) and (4). Missouri Pac. R. Co. v. Norwood, 1931, 283 U.S. 249, 51 S.Ct. 458, 75 L.Ed. 1010, modified, 283 U.S. 809, 51 S.Ct. 652, 75 L.Ed. 1428, affirming D.C.W.D.Ark.1930, 42 F. 2d 765. Likewise, state demurrage charges were held matters of "car service" not within the scope of § 13. Chicago, M., St. P. & P. R. Co. v. McCree & Co., D.C.D.Minn.1950, 91 F.Supp. 57. Cf. Railroad Commission of State of Wisconsin v. Chicago, B. & Q. R. Co. 1922, 257 U.S. 563, 584–587, 42 S.Ct. 232, 66 L.Ed. 371.

Plaintiff also pins some hope on Section 3(1) of the Interstate Commerce Act. This section provides as follows:

§ 3(1) "Undue preferences or prejudices prohibited.

"It shall be unlawful for any common carrier subject to the provisions of this chapter to make, give, or cause any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic, in any respect whatsoever; or to subject any particular person, company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever: *Provided, however,* That this paragraph shall not be construed to apply to discrimination, prejudice, or disadvantage to the traffic of any other carrier of whatever description." 49 U.S.C.A. § 3(1).

The reports are full of statements to the effect that this section is to prevent discrimination[1] and in the Shreveport Rate Case (234 U.S. at page 356, 34 S.Ct. at page 838), the language was very broad. We cannot see how the action of the New Jersey Board of Public Utility Commissioners, affirmed by that state's courts, in refusing to allow the railroad to give up the train in question discriminates against anyone. As the Interstate Commerce Commission said, "The interstate passengers and localities served by the train would seem to be benefitted by the board's order." 299 I.C.C. at page 49. The plaintiff suggests an injury or

1. E. g. Dixie Carriers, Inc., v. United States, 1956, 351 U.S. 56, 60, 76 S.Ct. 578, 100 L.Ed. 934; United States v. Baltimore & O. R. Co., 1948, 333 U.S. 169, 175, 68 S.Ct. 494, 92 L.Ed. 618; State of New York v. United States, 1947, 331 U.S. 284, 296, 67 S.Ct. 1207, 91 L.Ed. 1492; Mitchell v. United States, 1941, 313 U.S. 80, 94–95, 61 S.Ct. 873, 85 L.Ed. 1201; Merchants Warehouse Co. v. United States, 1931, 283 U.S. 501, 512–513, 51 S.Ct. 505, 75 L.Ed. 1227; and Louisville, & N. R. Co. v. United States, 1931, 282 U.S. 740, 749–750, 51 S.Ct. 297, 75 L.Ed. 672.

prejudice to the interstate riders of Train 613 because those riders are not assured of continuous service, since the railroad may abandon an interstate train, while the intrastate riders are assured of continuous service under the New Jersey Board's order. We do not think this fear of what probably will never come to pass is sufficient to describe the type of discrimination that needs court action to stop it.

As for the rest, we do not see any discrimination resulting from the New Jersey court action. It may create a tough situation for the receiver of a financially embarrassed railroad but the appeal from New Jersey Supreme Court's action was dismissed because a federal question was thought to be lacking. That disposes of any legal or constitutional federal question resulting from the train's continued operation.

We have been over the plaintiff's argument many, many times. The conclusion is that we do not find in the New Jersey order anything which constitutes, or can constitute, discrimination against interstate commerce or the persons engaged therein.

The petition will be dismissed.