Justice Thomas,
dissenting.
The Court holds that failure to pay a payphone operator for coinless calls is an “unjust or unreasonable” “practice” under 47 U. S. C. § 201(b). Properly understood, however, §201 does not reach the conduct at issue here. Failing to pay is not a “practice” under §201 because that section regulates the activities of telecommunications firms in their role as providers of telecommunications services. As such, § 201(b) does not reach the behavior of telecommunication firms in other aspects of their business. I respectfully dissent.
I
The meaning of § 201(b) of the Communications Act of 1984 becomes clear when read, as it should be, as a part of the entirety of §201. Subsection (a) sets out the duties and broad discretionary powers of a common carrier:
“It shall be the duty of every common carrier engaged in interstate or foreign communication by wire or radio to furnish such communication service upon reasonable request therefor; and ... to establish physical connections with other carriers, to establish through routes and charges applicable thereto and the divisions of such charges, and to establish and provide facilities and regulations for operating such through routes.”
Immediately following that description of duties and powers, subsection (b) requires:
“All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful....”
*75 The “charges, practices, classifications, and regulations” referred to in subsection (b) are those “establish[ed]” under subsection (a). Having given common carriers discretionary power to set charges and establish regulations in subsection (a), Congress required in subsection (b) that the exercise of this power be “just and reasonable.” Thus, unless failing to pay a payphone operator arises from one of the duties under subsection (a), it is not a “practice” within the meaning of subsection (b).
Subsection (a) prescribes a carrier’s duty to render service either to customers (“furnish[ing] . . . communication service”) or to other carriers (e. g., “establishing] physical connections”); it does not set out duties related to the receipt of service from suppliers. Consequently, given the relationship between subsections (a) and (b), subsection (b) covers only those “practices” connected with the provision of service to customers or other carriers. The Court embraced this critical limitation in Missouri Pacific R. Co. v. Norwood, 283 U. S. 249 (1931), which held that the term “practice” means a “‘practice’ in connection with the fixing of rates to be charged and prescribing of service to be rendered by the carriers.” Id., at 257. In Norwood, the Court interpreted language from the Interstate Commerce Act (as amended by the Mann-Elkins Act) that Congress just three years later copied into the Communications Act. 283 U. S., at 253; see § 7 of the Mann-Elkins Act of 1910, 36 Stat. 546. In passing the Communications Act, Congress may “be presumed to have had knowledge” and to have approved of the Court’s interpretation in Norwood. See Lorillard v. Pons, 434 U. S. 575, 581 (1978). As a result, the Supreme Court’s contemporaneous interpretation of “practice” should bear heavily on our analysis.
Other terms in §201 support using Norwood’s restrictive interpretation of “practice,” A word “is known by the company it keeps,” and one should not “ascrib[e] to one word a meaning so broad that it is inconsistent with its accompany *76 ing words.” Gustafson v. Alloyd Co., 513 U. S. 561, 575 (1995). Of the quartet “charges, practices, classifications, and regulations,” the terms “charges,” “classifications,” and “regulations” could apply only to the party “furnishing]” service. “[C]harges” refers to the charges for physical connections and through routes. 47 U. S. C. §§ 201(a), 202(b). “[Regulations” relates to the operation of through routes. § 201(a). “[Classifications” refers to different sorts of communications that carry different charges. § 201(b). These three terms involve either setting rules for the provision of service or setting rates for that provision. In keeping with the meaning of these terms, the term “practices” must refer to only those practices “in connection with the fixing of rates to be charged and prescribing of service to be rendered by the carriers.” Norwood, supra, at 257.
The statutory provisions surrounding §201 confirm this interpretation. Section 203 requires that “[e]very common carrier . .. shall... file with the Commission .. . schedules showing all charges for itself and its connecting carriers ... and showing the classifications, practices, and regulations affecting such charges.” See also §§204-205 (also using the phrase “charge, classification, regulation, or practice” in the tariff context). The “charges” referred to are those related to a carrier’s own services. §203 (“charges for itself and its connecting carriers”). The “classifications, practices, and regulations” are also limited to a carrier’s own services. Ibid, (applying only to practices “affecting such charges”). In this context, “practices” must mean only those “in connection with the fixing of rates to be charged.” Norwood, 283 U. S., at 257. Section 202 — outside of the tariff context— also supports this limitation. It forbids discrimination “in charges, practices, classifications, regulations, facilities, or services.” Discrimination occurs with respect to a carrier’s provision of service — not its purchasing of services from others. I am unaware of any context in which §§ 202-205 were *77 applied to conduct relating to the service that another party provided to a telecommunications carrier.
In this case, Global Crossing has not provided any service to Metrophones. Rather, Global Crossing has failed to pay for a service that Metrophones supplied. The failure to pay a supplier is not in any sense a “ ‘practice’ in connection with the fixing of rates to be charged and prescribing of service to be rendered by the carriers.” Id., at 257. Accordingly, Global Crossing has not engaged in a practice under subsection (b) because the failure to pay has not come in connection with its provision of service or setting of rates within the meaning of subsection (a). On this understanding of §201, Global Crossing’s failure to pay Metrophones is not a statutory violation. All that remains is a regulatory violation, which does not provide Metrophones a private right of action under § 207.[1]
II
The majority suggests that deference under Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837 (1984), compels its conclusion that a carrier’s refusal to pay a payphone operator is unreasonable. But “unjust or unreasonable” is a statutory term, § 201(b), and a court may not, in the name of deference, abdicate its responsibility to interpret a statute. Under Chevron, an agency is due no deference until the court analyzes the statute and determines that Congress did not speak directly to the issue under consideration:
“The judiciary is the final authority on issues of statutory construction and must reject administrative con *78 structions which are contrary to clear congressional intent.... If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.” Id., at 843, n. 9.
The majority spends one short paragraph analyzing the relevant provisions of the Communications Act to determine whether a refusal to pay is an “‘unjust or unreasonable’” “‘practice.’” Ante, at 53. Its entire statutory analysis is essentially encompassed in a single sentence in that paragraph: “That is to say, in ordinary English, one can call a refusal to pay Commission-ordered compensation despite having received a benefit from the payphone operator a ‘practice ... in connection with [furnishing a] communication service... that is ... unreasonable.’ ” Ante, at 55 (omissions and modifications in original). This analysis ignores the interaction between § 201(a) and § 201(b), supra, at 74-75; it ignores the three terms surrounding the word “practice” and the context those terms provide, supra, at 76; it ignores the use of the term “practice” in nearby statutory provisions, such as §§202-205, supra, at 76-77; and it ignores the understanding of the term “practice” at the time Congress enacted the Communications Act, supra, at 75.
After breezing by the text of the statutory provisions at issue, the majority cites lower court cases to claim that “the underlying regulated activity at issue here resembles activity that both transportation and communications agencies have long regulated.” Ante, at 55. It argues that these cases demonstrate that “communications firms entitled to revenues under rate divisions or cost allocations might bring lawsuits under §207 . . . and obtain compensation or damages.” Ante, at 56 (citing Allnet Communication Serv., Inc. v. National Exch. Carrier Assn., Inc., 965 F. 2d 1118 (CADC 1992), and Southwestern Bell Tel. Co. v. Allnet Communications Servs., Inc., 789 F. Supp. 302 (ED Mo. 1992)). But in both cases, the only issue before the court was whether the *79 lawsuit should be dismissed because the FCC had primary jurisdiction; and in both cases, the answer was yes. Allnet, supra, at 1120-1123; Southwestern Bell, supra, at 304-306. The Court’s reliance on these cases is thus entirely misplaced because both courts found they lacked jurisdiction; the cases do not address § 201 at all — the interpretation of which is the sole question in this case; and both cases assume without deciding that §207 applies, thus not grappling with the point for which the majority claims its support.[2]
Ill
Finally, independent of the FCC’s interpretation of the language “unjust or unreasonable” “practice,” the FCC’s interpretation is unreasonable because it regulates both interstate and intrastate calls. The unjust-and-unreasonable requirement of § 201(b) applies only to “practices ... in connection with such communication service,” and the term “such communication service” refers to “interstate or foreign communication by wire or radio” in § 201(a) (emphasis added). Disregarding this limitation, the FCC has applied its rule to both interstate and intrastate calls. 47 CFR §64.1300 (2005). In light of the fact that the statute explicitly limits “unjust or unreasonable” “practices” to those involving “interstate or foreign communication,” the FCC’s application of § 201(b) to intrastate calls is plainly an unreasonable interpretation of the statute. To make matters worse, the FCC has not even bothered to explain its clear misinterpretation. See In re Pay Telephone Reclassi *80 fication and Compensation Provisions of the Telecommunications Act of 1996, 18 FCC Red. 19975 (2003).
The majority avoids directly addressing this argument by stating there is no reason “to prohibit the FCC from concluding that an interstate half loaf is better than none.” Ante, at 64. But if the FCC’s rule is unreasonable, Metrophones should not be able to recover for intrastate calls in a suit under § 207. Because intrastate calls cannot be the subject of an “unjust or unreasonable” practice under §201, there is no private right of action to recover for them, and the Court should cut off that half of the loaf. By sidestepping this issue, the majority gives the lower court no guidance about how to handle intrastate calls on remand.
IV
Because the majority allows the FCC to interpret the Communications Act in a way that contradicts the unambiguous text, I respectfully dissent.

 Other enforcement mechanisms exist to redress Global Crossing’s failure to pay. The Federal Communications Commission (FCC) has the power to impose fines under 47 U. S. C. §§ 503(b)(1)(B) and (2)(B). In addition, the FCC may have the authority to create an administrative right of action under § 276(b)(1) (giving the FCC power to “take all actions necessary” to “establish a per call compensation plan” that ensures “all payphone service providers are fairly compensated”).

 The majority’s citation to Chicago & North Western Transp. Co. v. Atchison, T. & S. F. R. Co., 609 P. 2d 1221 (CA7 1979), is similarly misplaced. There, the Court of Appeals interpreted the meaning of the statutory requirement to ‘“establish just, reasonable, and equitable divisions’” under the Interstate Commerce Act. Id., at 1224. It is difficult to understand why the Seventh Circuit’s interpretation of different statutory language is relevant to the question we face in this ease.