## HOOKER *v.* KNAPP ET AL., MEMBERS OF THE INTERSTATE COMMERCE COMMISSION.

## EAGLE WHITE LEAD COMPANY *v.* INTERSTATE COMMERCE COMMISSION.

APPEALS FROM THE UNITED STATES COMMERCE COURT.

Nos. 773, 774. Argued January 11, 1912.—Decided June 7, 1912.

Decided on authority of *Procter & Gamble* v. *United States, ante,* p. 282. 188 Fed. Rep. 242, 256, reversed.

THE facts, which involve the jurisdiction of the United States Commerce Court, are stated in the opinion.

*Mr. Francis B. James* for appellants:

A shipper has equal right with a railroad corporation to bring a bill in equity to annul an order of the Commission. This right exists independent of and does not arise from statute. *Peavey* v. *Union Pacific Ry. Co.,* 176 Fed. Rep. 409; *Int. Com. Comm.* v. *Diffenbaugh,* 222 U. S. 42, 49.

United State Circuit Court and Commerce Court are both given jurisdiction of such action. Section 16, Act to Regulate Commerce, amended March 2, 1889, June 29, 1906, and June 18, 1910, and act creating Commerce Court, June 18, 1910.

"Against" means "in reference to," "concerning" or "touching" a carrier. *Silver* v. *Ladd* (1869), 7 Wall. 219;

*Seabright* v. *Seabright*, 28 W. Va. 412, 465. The statute defines venue and confirms jurisdiction.

The case at bar is within the express language of statute and the order assailed is not a negative one.

*Mr. Assistant Attorney General Denison*, with whom *Mr. Jesse C. Adkins* and *Mr. Blackburn Esterline*, Special Assistants to the Attorney General, were on the brief, for the United States:

No principle of law required the Commission to determine the reasonableness of rates exclusively with reference to the cost of transportation by the shorter route. On the contrary, this court has held that it is the duty of the Commission not to exclude other things from its consideration. *Texas & Pacific Ry.* v. *I. C. C.*, 162 U. S. 197, 199; *I. C. C.* v. *C., R. I. & P. Ry.*, 218 U. S. 103.

In this particular case the Commission had to consider not only the supposed interests of the individual petitioning shippers, but the interests of Cincinnati, of Chattanooga, of the intervening points, the relation of through rates, the rates on other lines in similar conditions, the growth and commercial needs of the country served, the value of the transportation to the shippers (which includes the possibility of their reaching the market at a profit), the commercial conditions, the effect on the communications of Cincinnati, Chattanooga, and intervening points with the West, and with the East, and many other details of fact and policy.

The question whether the Commission in determining the reasonableness of rates, shall adopt the policy of limiting its cognizance to the bee line, is a legislative and not a legal question. *Prentiss* v. *Atlantic Coast Line*, 211 U. S. 224; *I. C. C.* v. *C., N. O. & T. R. Ry. Co.*, 167 U. S. 479, 499, 500, 505; *San Diego Land &c. Co.* v. *Jasper*, 189 U. S. 439, 440; *Burnham, Hanna, Munger Co. Case*, 218 U. S. 88, 103.

The long continued practice of the Commission on this point has been left undisturbed by Congress and should not now be disturbed by the court. See 3 Interstate Commerce Commission Reports, 502; 4 Ibid., 130, *Food Products Investigation*, 15 I. C. C. 376; *Kindel Case*, 15 I. C. C. 392; *Spokane Case*, 16 I. C. C. 595.

It is not a case of an application for leave to create a new, expensive route and for leave to foster that artificially by raising the rates on the prior and cheaper line. On the contrary, the question was whether the Commission should exclude an old established trade route, now carrying one-half the traffic; and this without any intimation as to whether the short line had equipment or capacity to carry the entire traffic, or had capital within reach to obtain such equipment or capacity.

Neither was it a case in which the longer route was an unreasonably roundabout line of communication between the two points.

Under the conditions of this record the conclusion of the Commission in determining the reasonable maximum rate is a pure conclusion of fact and is not reviewable; as has been held by this court again and again.

The Commerce Court had no jurisdiction of the petition, because the Commerce Court act did not include among the orders of the Commission which the Commerce Court might set aside, annul or suspend, orders of merely negative effect. This appears from the context and history. The context and other provisions of the act show that only enforceable affirmative orders were intended to be set aside. This also appears from the fact that no process is authorized appropriate to any relief against a non-active order. The Commerce Court is a court of original jurisdiction and not an appellate court which receives a record from a tribunal below. There is no line along which a mandate from the Commerce Court could move to the Commission directing it to reopen a case and

give affirmative relief; nor is there any provision for mandamus in such a situation. It is not probable that Congress, if it had intended to give the Commerce Court this jurisdiction, would have left that court without any means of bringing itself to bear and thus made its judgment mere *brutum fulmen.*

*Mr. P. J. Farrell* for the Interstate Commerce Commission.

*Mr. R. Walton Moore* for Cincinnati, New Orleans & Texas Pacific Railway Company.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The appellants in these cases originally applied to the Interstate Commerce Commission for reduction of the maximum rates between Cincinnati and Chattanooga from the 76 c. schedule to a 60 c. schedule. The Commission refused to make the full extent of this reduction. Thereupon the respective parties filed bills in the Commerce Court demanding that the Commission's order be "suspended, set aside, annulled, and declared void and of no effect" and that the individual defendants and the Commission be required by mandatory injunction to set aside and annul the said order, that the case be reopened, and the complainants given further relief. The two bills were consolidated. The individual defendants, the Commission, and the Railroad Company all demurred to the bill on the merits. The United States moved to dismiss on the ground that the court had no jurisdiction. The court took jurisdiction, but dismissed on the merits. These appeals were then prosecuted. The cases are, in all respects, controlled by the opinion announced and ruling made in the *Procter & Gamble Case*, this day de-

cided (*ante*, p. 282) and for the reasons in that case stated, these cases must be and are remanded, with directions to dismiss for want of jurisdiction, and

*It is so ordered.*