## SOUTHERN TRANSP. CO. et al. v. INTERSTATE COMMERCE COMMISSION.*

### No. 4993.

Court of Appeals of District of Columbia.

Argued Jan. 8, 1931.

Decided Feb. 2, 1931.

Karl Knox Gartner, of Washington, D. C., for appellants.

Daniel W. Knowlton and Nelson Thomas, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a decree of the Supreme Court of the District of Columbia dismissing the bill of appellant companies for a mandatory injunction to compel the Interstate Commerce Commission to vacate its order dismissing appellants' complaint seeking the recovery of certain transportation charg-

*Certiorari denied 51 S. Ct. 559, 75 L. Ed. —.

es which the commission found were paid in violation of section 6 of the Interstate Commerce Act (49 USCA § 6).

It appears that appellants operated seagoing tugs in the Atlantic Coastwise Trade. These tugs bunkered with coal at Norfolk, Va. In addition to the price paid for the coal itself, appellant companies agreed to pay all transportation costs from the mine to the bunker hold. In the delivery of the coal the railroads provided coal dumping piers over which the coal was delivered directly from the cars to the bunker holds. The transportation costs included the haul from the mines to the wharf and the separate charge for the use of the coal piers. For this service published tariffs as required by section 6, supra, were on file with the commission. In addition to these charges the railroads collected a port or wharfage charge on each tug, which was not included in the published tariff on file with the commission.

Appellants filed a complaint with the commission alleging that the port or wharfage charge was collected in violation of section 6 of the Interstate Commerce Act, 24 Stat. 381, providing that it shall be unlawful for any "common carrier to charge, demand, collect, or receive from any person or persons a greater or less compensation for the transportation of passengers or property, or for any services in connection therewith, than is specified in such published schedule of rates, fares, and charges as may at any time be in force." Whereupon the Attorney-Examiner, representing the commission, found after due hearing that this charge was made for transportation service within the meaning of the Interstate Commerce Act; and that, inasmuch as it had not been published in tariffs on file with the commission, it had been illegally collected and should be refunded.

The commission reviewed the report of the Attorney-Examiner and directed an order requiring the carriers to publish this charge in the future, but declined to make any finding upon appellants' right to refund of charges so collected. Within time the appellants filed a petition for rehearing, which petition was denied. A petition was then filed for reopening, rehearing, and reconsideration, confined exclusively to the question of reimbursement for the port or wharfage charges paid without tariff authority. This petition was granted, a hearing held, and decision rendered (147 I. C. C. 29) in which it was found that the collection of the port or wharfage charges was a violation of section 6 of the Interstate Commerce Act, but that appellants

were not entitled to a refund because they had not been damaged, since the charges were the same which had been found to be reasonable, and which the transportation companies had later been permitted by the commission to include in their published tariffs.

This decision was based upon the early decision of the commission in Memphis Freight Bureau v. Kansas City Southern Ry. Co., 17 I. C. C. 90, as follows: "We hold that where a transportation service has been rendered for which no tariff authority whatever existed at the time, and where the shipper has paid the sum claimed by the carrier for that service, this Commission has jurisdiction to inquire what was a reasonable charge for the service and to order the repayment of whatever the carrier has collected over and above such reasonable charge. It cannot order a repayment of the entire amount paid since the authority of this Commission only extends to the awarding of damages for violations of the act, and certainly there are no damages in any proper sense of the word unless the shipper has been compelled to pay more than a reasonable rate. Moreover, to hold that one shipper should pay nothing for his transportation while his competitor shipping perhaps the next day must pay a reasonable charge, would be to permit and create the very discrimination which the act seeks to prevent."

■ The order of the commission here sought to be enjoined is a negative order, and is not subject to injunction under subsection (28) of section 24 of the Judicial Code, 28 USCA § 41(28), since the jurisdiction there conferred applies only to affirmative orders of the commission. In Manufacturers R. Co. v. United States, 246 U. S. 457, 483, 38 S. Ct. 383, 390, 62 L. Ed. 831, the court, considering the jurisdiction conferred upon United States District Courts by the foregoing statute, said: "But that court has only the same jurisdiction that formerly was vested in the Commerce Court (Act of June 18, 1910, c. 309, 36 Stat. 539; Act of October 22, 1913, Chap. 32, 38 Stat. 208, 219 [Comp. Stat. 1916, § 3279]; and it is settled that this does not permit the court to exercise administrative authority where the Commission has failed or refused to exercise it, or to annul orders of the Commission not amounting to an affirmative exercise of its powers. Procter & Gamble Co. v. United States, 225 U. S. 282, 292, et seq., 32 S. Ct. 761, 56 L. Ed. 1091."

■ It is urged in this case, however, that the limitation placed upon the District Court does not apply when the general equity jurisdiction of the Supreme Court of the District of Columbia has been invoked. But the jurisdiction of the Supreme Court of the District cannot be enlarged to confer a jurisdiction that is expressly limited by statute, since the jurisdiction exercised by the Supreme Court of the District, in cases where jurisdiction by statute is conferred upon District Courts of the United States, confers upon the Supreme Court of the District only the same jurisdiction that could be exercised by a District Court. We are, therefore, not impressed with the contention of counsel for appellants that the Supreme Court of the District, under its general equity jurisdiction, would have authority to enjoin, set aside, or enforce a negative order of the Interstate Commerce Commission.

The jurisdiction now in the District Courts of the United States is the same as that transferred from the Circuit Courts to the Commerce Court. In Procter & Gamble Co. v. U. S., 225 U. S. 282, 32 S. Ct. 761, 765, 56 L. Ed. 1091, the court, analyzing the Commerce Court Act and the jurisdiction conferred thereunder, of "cases brought to enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission," said: "Giving to these words their natural significance we think it follows that they confer jurisdiction only to entertain complaints as to affirmative orders of the Commission; that is, they give the court the right to take cognizance, when properly made, of complaints concerning the legality of orders rendered by the Commission, and confer power to relieve parties in whole or in part from the duty of obedience to orders which are found to be illegal."

The court in its opinion reviewed at great length the jurisdiction of the courts to control the action of the Interstate Commerce Commission. It pointed out clearly that prior to the creation of the Commerce Court no authority existed in any court to interfere by injunction with a negative order of the commission on the theory that such interference by the court would amount to the substitution of the court's judgment for the discretion conferred upon the commission. It was further held that the Commerce Court Act conferred no additional jurisdiction in this respect over that possessed by the Circuit Courts, and that to confer the right upon any court to enjoin and set aside negative orders of the commission would interfere with the control which Congress had conferred upon

the Interstate Commerce Commission over matters relating to commerce.

The court, referring to the scope and intent of Congress as expressed in the Commerce Act, said: "The statute, therefore, necessarily, while it created new rights in favor of shippers, in order to make those rights fruitful as to the subjects with which the statute dealt, coming within the scope of the administrative unity which we have mentioned, primarily made the judgment of the administrative body to whom the statute confided the enforcement of the act in the respects stated a prerequisite to a resort to the courts. In other words, as to the subjects stated, the act did not ·give to the courts power to hear the complaint of a party concerning a violation of the act, but only conferred power to give effect to such complaints when, by previous submission to the Commission, they had been sanctioned by a command of that body."

In other words, it limited the jurisdiction of the courts to intervene merely as to affirmative orders. It follows, therefore, that if the court were to suspend an order of the commission dismissing an application for reparation and enjoin an award thereof, as prayed for in this case, it would be in direct contravention to the original purpose and intent of the Commerce Act. It may well be that an error was committed by the commission in refusing to grant the petition of appellants, but this action cannot be converted into a proceeding in error for the purpose of reviewing errors of law that may have been committed by the commission in a proceeding over which its jurisdiction must be conceded.

The decree is affirmed.