## INGHRAM v. UNION STOCK YARDS CO. OF OMAHA, Limited, et al.

### No. 1283.

District Court, D. Nebraska, Omaha Division. Oct. 28, 1933.

E. D. O'Sullivan, of Omaha, Neb., for plaintiff.

Brown, Fitch & West, of Omaha, Neb., for defendant Union Stock Yards Co.

Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., for defendant Secretary of Agriculture.

Before GARDNER and WOODROUGH, Circuit Judges, and DONOHOE, District Judge.

GARDNER, Circuit Judge.

This is a suit in equity brought pursuant to section 316 of the Packers and Stockyards Act of 1921 (7 USCA § 217), in which the plaintiff, a market agency dealing in live stock, seeks to enjoin the Union Stock Yards Company of Omaha (Limited), a corporation, the United States of America, and the Secretary of Agriculture, from enforcing certain charges for the service of reweighing live stock sold and delivered at the yards of the Stock Yards Company, and to enjoin and restrain that company from collecting a judgment obtained by it against plaintiff for similar charges exacted by the Stock Yards Company, which judgment was affirmed by the Circuit Court of Appeals of the Eighth Circuit on appeal taken by the plaintiff. Ingham v. Union Stock Yards Co. of Omaha, 64 F.(2d) 390.

The defendant Union Stock Yards Company has filed its separate motion to dismiss the suit on three grounds: (1) Insufficiency of the allegations of the bill of complaint as a basis for the relief asked; (2) plaintiff has an adequate remedy at law; (3) this court is without jurisdiction of the subject-matter. The defendants United States of America and the Secretary of Agriculture have also filed motion to dismiss on the grounds: (1) That the court is without jurisdiction of the subject-matter; (2) the allegations of the bill of complaint are insufficient to justify the relief sought.

The facts admitted by these motions may

be summarized as follows: The plaintiff is a market agency registered with the Secretary of Agriculture, dealing in live stock, as defined in the Packers and Stockyards Act (section 301 (d), Act Aug. 15, 1921, c. 64, 42 Stat. 163, section 201, U. S. Code title 7 [7 USCA § 201]), and is engaged in buying and selling live stock in the commission division of the defendant Union Stock Yards Company of Omaha, Neb. The defendant Union Stock Yards Company of Omaha (Limited) has its principal office and place of business at Omaha, Neb., where it owns, maintains, and operates a stockyards designated as a public stockyards by the Secretary of Agriculture under the Packers and Stockyards Act (42 Stat. 159, U. S. Code title 7, §§ 181–229 [7 USCA §§ 181–229]).

At the time the defendant Union Stock Yards Company was opened as a public market by the Secretary of Agriculture, it filed its tariff of rates and charges for its services as required by the act. This tariff contained, among other provisions, a charge of one-half of the regular yardage charge on all live stock planted and resold in the commission division. This yardage charge was, on the Secretary's own motion, investigated for the purpose of determining whether it was just, reasonable, and nondiscriminatory. As a result of such investigation the Secretary determined, by his order of June 22, 1923, that the charge was discriminatory, and by an order directed the Stock Yards Company to cease and desist from collecting same. This order did not prescribe rates which would be nondiscriminatory, and was silent as to the method which the Stock Yards Company might use in removing the discrimination.

Following the issuance of this order, the Stock Yards Company filed a tariff effective August 1, 1923, in the nature of an amendment, which substituted for the half-yardage charge certain charges for the reweighing of live stock, except live stock going to the country. This provision was then carried into subsequent schedules filed by the Stock Yards Company. Among these schedules was supplement No. 2 to schedule No. 2, which contained the following exception: "Except on live stock going to the country, no re-weigh charge will be made." Schedule No. 3 became effective May 10, 1928, and schedule No. 4 became effective September 10, 1931. All these subsequent schedules contained yardage charges and also charges for reweighing, and contained the same exception as embraced in supplement No. 2 to schedule No. 2 above noted.

Plaintiff in this suit filed with the Secretary of Agriculture complaint against the so-called reweigh charge, and this complaint, on hearing by the Secretary of Agriculture, was on August 29, 1928, dismissed, the Secretary holding that the reweigh was not unlawfully discriminatory. The plaintiff herein, however, refused to pay such charges, and as a result the Stock Yards Company brought suit in this court and obtained a judgment against it. This judgment was affirmed by the Circuit Court of Appeals in Inghram v. Union Stock Yards Co., 64 F.(2d) 390. This judgment remains unpaid, and the Stock Yards Company threatens to levy execution against plaintiff's property to satisfy it, and other charges against plaintiff have accumulated, amounting in all to $875.83, and further action to collect same is threatened by the Stock Yards Company.

It is alleged in the bill of complaint that: "Your petitioner believes that said schedules of re-weigh charges aforementioned and the order of said C. F. Marvin are illegal, null and void in that they are not based upon any legal or proper schedule of charges which said Union Stock Yards Company could lawfully make and that the pretended schedules of charges which are sought to be enforced in this instance by said Union Stock Yards Company is discriminatory, null and void for the following reasons and each of them:"

There is then set out various alleged reasons, the substance of which may be summarized as follows: (a) Discrimination between plaintiff and other dealers who resell at the market and those who obtain a like service at the market, but do not resell their live stock there, but ship it to the country; (b) that there is no substantial distinction between a reweigh on stock sent to the country and a reweigh on stock resold at the stockyards; (c) that the schedules or charges for reweigh are in direct conflict with the opinion of the Secretary of Agriculture rendered June 22, 1923; (d) that no services are rendered which would justify a reweigh charge; (e) that the imposing of the reweigh charge is an unfair burden on those who are compelled to pay for it; (f) that the reweigh charge is not made in good faith; (g) that its enforcement is in violation of the Constitution; (h) that the reweigh charge is paid for once in the original yardage charge; (i) that it represents a charge for a "fake privilege of the market."

The motions to dismiss, of course, admit every well-pleaded allegation of fact.

Clark v. Pigeon River Improvement Slide & Boom Co. (C. C. A. 8) 52 F.(2d) 550; United States Navigation Co. v. Cunard S. S. Co., 284 U. S. 474, 52 S. Ct. 247, 76 L. Ed. 408. They do not admit, however, matters of argument, conclusions of law, nor mere inferences or conclusions as to matters of fact. Missouri Pacific R. Co. v. Norwood, 283 U. S. 249, 51 S. Ct. 458, 75 L. Ed. 1010.

Section 316 of the Packers and Stockyards Act (section 217, title 7, U. S. Code [7 USCA § 217]) makes the provisions of all laws relating to suspending or restraining the enforcement, operation, or execution of, or the setting aside, in whole or in part, of orders of the Interstate Commerce Commission, applicable to the proceedings taken by the Secretary of Agriculture. Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229; Tagg Bros. v. United States, 280 U. S. 420, 50 S. Ct. 220, 74 L. Ed. 524. Even where a judicial review of an order of the Secretary is proper, it does not involve a trial de novo. Tagg Bros. v. United States, 280 U. S. 420, 50 S. Ct. 220, 74 L. Ed. 524. Except as to issues presenting the claim of confiscation or other invasion of constitutional rights, the validity of an order of the Secretary, like that of an order of the Interstate Commerce Commission, must be determined upon the record of the proceedings had before him.

At the very threshold of this inquiry, we are met with the challenge that the court is without jurisdiction, and that the suit should, therefore, be dismissed for want of jurisdiction. In support of this contention it is pointed out that the order of the Secretary complained of directed no affirmative relief, but was negative in character. The order dismissed plaintiff's complaint because the Secretary concluded, after hearing, that the reweigh charge assailed was not unjustly discriminatory. No new rates were prescribed by the Secretary. Procter & Gamble Co. v. United States, 225 U. S. 282, 32 S. Ct. 761, 56 L. Ed. 1091, and Piedmont & No. Ry. Co. v. United States, 280 U. S. 469, 50 S. Ct. 192, 74 L. Ed. 551, are strongly relied upon as sustaining this contention.

In Procter & Gamble Co. v. United States, supra, a shipper which owned tank cars used in transporting its products, complained to the Interstate Commerce Commission of a rule of the carriers which subjected such cars to demurrage charges. The complaint charged that the challenged ruling was unjust and oppressive, and to enforce it would create preferences forbidden by the Interstate Commerce Act (49 USCA § 1 et seq.). After hearing, the Interstate Commerce Commission denied the relief sought and dismissed the complaint. 19 I. C. C. 556. The shipper then filed a petition in the Commerce Court of the United States (188 F. 221) against the United States, the Interstate Commerce Commission, and the carriers concerned, charging that the order of the Commission dismissing its complaint was null and void and beyond the power of the Commission. The United States and the Interstate Commerce Commission interposed a motion to dismiss because the order complained of directed no affirmative relief, and that the negative order afforded no basis for jurisdiction by the court. The court assumed jurisdiction, but on the merits held that the Commission had rightfully refused to grant relief. On appeal the Supreme Court reversed the decision upon the jurisdictional ground, holding that judicial review of orders of the Interstate Commerce Commission was confined to relief of parties, in whole or in part, from the duty of obedience to orders found to be illegal.

See, also, Kansas City S. R. Co. v. United States, 231 U. S. 423, 34 S. Ct. 125, 58 L. Ed. 296, 52 L. R. A. (N. S.) 1; Lehigh Valley R. Co. v. United States, 243 U. S. 412, 37 S. Ct. 397, 61 L. Ed. 819; United States v. Illinois C. R. Co., 244 U. S. 82, 37 S. Ct. 584, 61 L. Ed. 1007; Standard Oil Co. v. United States, 283 U. S. 235, 51 S. Ct. 429, 430, 75 L. Ed. 999; Piedmont & No. R. Co. v. United States, 280 U. S. 469, 50 S. Ct. 192, 74 L. Ed. 551; Interstate Commerce Commission v. United States, 289 U. S. 385, 53 S. Ct. 607, 77 L. Ed. 1273; Manufacturers' R. Co. v. United States, 246 U. S. 457, 38 S. Ct. 383, 62 L. Ed. 831; Keogh v. C. & N. W. Ry. Co. (C. C. A. 7) 271 F. 444; Bartlesville Zinc Co. v. Mellon (C. C. A. 7) 56 F.(2d) 154, 156; Southern Transportation Co. v. Interstate Commerce Commission, 60 App. D. C. 49, 47 F.(2d) 411, 413.

In Standard Oil Company v. United States, supra, it is said: "The Commission made two reports, one following the original hearing, and the other after reargument. The order based upon these reports simply dismissed the complaints; that is to say, the Commission refused to grant any affirmative relief to the appellant. It is plain that the order is negative both in form and effect. The jurisdiction of the district courts (transferred from their predecessor, the Commerce Court), in this class of cases, embraces (1) those brought for the 'enforcement' of orders

of the Commission, and (2) those brought to 'enjoin, set aside, annul, or suspend in whole or in part' such orders. It is obvious that this language was not intended to apply to purely negative orders. A negative order which denies relief without more compels nothing requiring enforcement, and contemplates no action susceptible of being stayed by an injunction or affected by a decree setting aside, annulling, or suspending the order."

In Bartlesville Zinc Co. v. Mellon, supra, the Circuit Court of Appeals of the Seventh Circuit said, inter alia: " * * * This court is without jurisdiction to review the decision even though there were palpable error of law or evidence of arbitrary action. Authority for such review must have its origin in legislative enactment, and the Congress has as yet granted to courts the right to review only such orders of the Commission as are affirmative in character. Judicial Code § 24 (28), 28 USCA § 41 (28). There has been created no right of judicial review of orders entered in pursuance of the exercise of the Commission's jurisdiction wherein it refuses to grant relief."

In Southern Transportation Co. v. Interstate Commerce Commission, supra, the court said: "In other words, it limited the jurisdiction of the courts to intervene merely as to affirmative orders. It follows, therefore, that if the court were to suspend an order of the commission dismissing an application for reparation and enjoin an award thereof, as prayed for in this case, it would be in direct contravention to the original purpose and intent of the Commerce Act."

It is true that in these decisions the courts were considering orders of the Interstate Commerce Commission, but the Packers and Stockyards Act in no manner modifies the application of these rules to proceedings before the Secretary of Agriculture. On the other hand, it specifically makes them applicable. It must not be understood that the mere form of the order necessarily determines its character, and an order negative in form may be subject to review if in substance it is affirmative. United States v. New River Co., 265 U. S. 533, 44 S. Ct. 610, 612, 68 L. Ed. 1165; Alton R. Co. v. United States, 287 U. S. 229, 53 S. Ct. 124, 126, 77 L. Ed. 275.

In United States v. New River Co., supra, suit was brought against certain common carriers, the United States, and the Interstate Commerce Commission, to enjoin the application of a certain rule of the carriers for the distribution of coal cars, and to set aside an order of the Commission which dismissed

complaints attacking the rule as unjust, unreasonable, and unduly prejudicial. A District Court of three judges (New River Co. v. Chesapeake & O. R. Co., 293 F. 460) took jurisdiction and set the order aside, and on appeal it was contended that the order was negative and, hence, not subject to review. In disposing of this contention the Supreme Court said:

"The appellants contend the order is negative, and therefore not subject to review by the court. They cite Procter & Gamble Co. v. United States, 225 U. S. 282, 32 S. Ct. 761, 56 L. Ed. 1091; Hooker v. Knapp, 225 U. S. 302, 32 S. Ct. 769, 56 L. Ed. 1099, and Lehigh Valley R. Co. v. United States, 243 U. S. 412, 37 S. Ct. 397, 61 L. Ed. 819. In the first of these cases, application was made by the Procter & Gamble Company, a shipper and owner of tank cars, to be relieved from paying demurrage charges, in accordance with demurrage rules applied by the carrier. The Commission dismissed the complaint. As shown by the report (19 I. C. C. 556, 560), the reason for dismissal was that the tank cars were made subject to the demurrage rules, by an arrangement between the shipper owning the cars and the carrier hauling them. The question before this court (page 292 [of 225 U. S., 32 S. Ct. 761]) was whether the Commerce Court had power to exert its own judgment by originally interpreting the administrative features of the Act to Regulate Commerce, and upon that assumption to treat the refusal of the Commission to grant the relief prayed for as an affirmative order, and accordingly to pass on its correctness. Hooker v. Knapp and Lehigh Valley R. Co. v. United States were decided on the authority of the Procter & Gamble Case. The opinion in that case, when viewed in the light of the report of the Commission, furnishes no support for appellants' contentions here. In all of these cases, affirmative relief sought was denied by the Commission. Judicial review was refused on that ground. The taking of jurisdiction in such cases would involve determination by the courts whether relief denied by the Commission, in the exercise of its powers, should be granted. See The Chicago Junction Case, 264 U. S. 258, 44 S. Ct. 317, 68 L. Ed. 667. The authority conferred upon the Commerce Court by section 207 of the Judicial Code [28 USCA § 41 (27) note] was vested in the District Courts by the Act of October 22, 1913, and, like the authority previously exercised by the federal Circuit Courts, is confined to determining whether the Commission's order violates the Constitution, or exceeds the pow-

er delegated by statute, or is an exercise of power so arbitrary as virtually to transcend the authority conferred. [Citing authorities.]

"The mere fact that the order of the Commission dismisses the complaint of shippers against rule 4 does not make it a negative order. That rule, promulgated during federal control, was continued in effect upon the recommendation of the Commission until it decided, June 21, 1921, that the rule was unduly prejudicial to joint mines and unduly preferential of local mines, and that the carriers should distribute cars to joint mines on the basis of the 150 per cent. rule. The Commission refrained from making an order that the rule be filed as a tariff schedule, but announced that it expected the carriers promptly to amend their car service rules to conform with its findings. Accordingly, the carrier ceased to apply rule 4 and applied the 150 per cent. rule in its place. When the case was reopened before the Commission, the contest was between the operators of local mines attacking the 150 per cent. rule and the operators of joint mines supporting that rule and objecting to rule 4. The Commission reversed its former findings and decided in favor of rule 4 and dismissed the complaints assailing that rule. The order expressly includes the findings and conclusions stated in the report. *It is not merely negative. Clearly, the order permits and authorizes the carriers to apply rule 4.* If that rule is illegal, as alleged, such permission and authority will not sustain it, and suit will lie to set it aside. The Chicago Junction Case, supra. Plainly, it was the intention and purpose of the Commission that rule 4 should be applied in place of the 150 per cent. rule. The effect of the order is to grant the relief sought by the operators of local mines. We hold that the District Court had jurisdiction." (Italics supplied.)

In Alton Railroad Co. v. United States, supra, in an opinion by Mr. Justice Brandeis, it is said:

"The order while negative in form was, in effect, an affirmative one. The joint 'reshipping' rates and the divisions thereof were established by agreement of the carriers participating in the transportation. The divisions were a term of that agreement. So long as the joint rates voluntarily established remain in force, each carrier is entitled as of right to the division originally agreed upon, unless a readjustment of the divisions has been made either by the parties or by the Commission pursuant to the power conferred by paragraph 6 of section 15 [49 USCA § 15 (6)]. The connecting carriers were legally without power to reduce the divisions of the Alton over its objection. If they deemed its divisions unreasonably large, they could have invoked the power of the Commission to make a reduction. Instead of applying to the Commission to adjust the existing divisions, they resorted to force. Availing themselves of their strategic position as collectors of the freight, they withheld from the Alton a part of what was due it.

" * * * The Commission's finding that the Alton's divisions were 'not unjust, unreasonable or otherwise unlawful,' and the refusal of relief, had the effect of reducing the divisions which had been fixed by agreement of the parties and to which, but for the Commission's action, the Alton would have continued to be legally entitled.

" * * * To annul the order would not, as in Lehigh Valley R. Co. v. United States, 243 U. S. 412, 37 S. Ct. 397, 61 L. Ed. 819, merely leave unchanged the very situation which the Commission's order refused to alter. Here the Alton, by virtue of the pre-existing agreement for divisions, would secure a measure of protection simply from the annulment of the order. To take jurisdiction would not be tantamount to usurpation by the court of the functions of the Commission. The court is not called upon here, as it was in Manufacturers' Ry. Co. v. United States, 246 U. S. 457, 483, 38 S. Ct. 383, 62 L. Ed. 831, and Standard Oil Co. v. United States, 283 U. S. 235, 241, 51 S. Ct. 429, 75 L. Ed. 999, to afford relief which the Commission, in the exercise of its powers, had found that the complainant was not entitled to receive."

The special circumstances appearing in these cases remove them from the effect of the rule that courts will not entertain jurisdiction to grant relief against a negative order.

What we are here asked to do is to exercise our own judgment upon the matters presented to the Secretary and to treat a refusal to grant the relief prayed for as an affirmative order, and accordingly to pass on its correctness. To hold in the instant case that the order here in question is in substance an affirmative one would in effect abolish the rule which has been established by numerous decisions of the Supreme Court and followed by other federal courts. If the rule is to be abolished or amended, it should be brought about by act of Congress, and not by judicial legislation. We are of the view that the suit should be dismissed for want of jurisdiction,

but if we should accept the theory that the order assailed is in effect and substance an affirmative one, we should still not be warranted in setting it aside.

■ The order of August 29, 1928, is attached to the bill of complaint. It recites the making of the complaint by the plaintiff herein, the response thereto by the defendant Stock Yards Company, the appearance of the parties by attorneys at the hearing, the introduction of evidence, the preparation of an opinion by the Secretary, in which the Secretary sets forth in detail his findings from the evidence, and his order thereon dismissing the complaint. To warrant the court in setting aside an order in a proceeding properly before the Secretary of Agriculture, it must affirmatively appear that the order rests upon an erroneous rule of law, or is based upon a finding made without evidence, or from evidence which clearly does not support it. Tagg Bros. v. United States, 280 U. S. 420, 50 S. Ct. 220, 74 L. Ed. 524; Inghram v. Union Stock Yards Co. (C. C. A. 8) 64 F. (2d) 390; Denver Union Stock Yard Co. v. United States (D. C. Colo.) 57 F.(2d) 735; Louisiana & P. Ry. Co. v. United States (Com. C.) 209 F. 244, 250.

In the last-cited case, the then existing Commerce Court said: "When, as in these cases, a full and fair hearing has been granted, the Commission's findings of fact are subject to review in this court only upon an allegation that they are not sustained by any substantial evidence in the record before it or are arbitrary in being based upon improper distinctions and considerations."

■ In the instant case the bill of complaint contains no allegations to the effect that the Secretary based his order upon any erroneous rule of law, or upon findings without support in the evidence, and there is a presumption that the findings of the Secretary are correct. Denver Union Stock Yard Co. v. United States (D. C. Colo.) 57 F.(2d) 735. There is, it is true, a bald allegation of unconstitutionality, and as other evidence in addition to that introduced before the Secretary might be admissible on a proper issue of constitu-

tionality, it is necessary to consider whether such an issue is here presented.

■ The allegation relied upon is that "the attempted enforcement of said reweigh charge is a violation of the Constitution of the United States." The burden is upon one asserting unconstitutionality to allege facts plainly showing the asserted repugnancy to the Constitution. Missouri Pacific R. Co. v. Norwood, 283 U. S. 249, 51 S. Ct. 458, 75 L. Ed. 1010; Beaumont, S. L. & W. R. Co. v. United States, 282 U. S. 74, 51 S. Ct. 1, 75 L. Ed. 221; Ætna Ins. Co. v. Hyde, 275 U. S. 440, 48 S. Ct. 174, 72 L. Ed. 357. Stripped of the legal conclusions of the pleader, there are no allegations of fact from which it can be said that the plaintiff has been deprived of any constitutional right or guaranty.

We conclude that on the merits the allegations of the bill of complaint are wholly insufficient to impeach the action of the Secretary of Agriculture.

■ As has been observed, plaintiff also seeks to enjoin the defendant Stock Yards Company from collecting its judgment entered by this court and affirmed on appeal by the Circuit Court of Appeals. The complaint is wholly void of any allegations entitling plaintiff to any such relief. The judgment has become a finality, and by its affirmance the judgment is now in effect a judgment of the appellate court, which this court, pursuant to mandate, is bound to enforce. It could now only be assailed, if at all, by a bill of review, application to file which could be entertained by this court only on leave granted by the appellate court. Obear-Nester Glass Co. v. Hartford-Empire Co. (C. C. A. 8) 61 F.(2d) 31; Hagerott v. Adams (C. C. A. 8) 61 F.(2d) 35; and cases there cited.

It would seem to be quite unnecessary to consider the contention of defendants that plaintiff has an adequate remedy at law, and we shall pretermit any discussion of that contention.

It follows that the motions to dismiss the bill of complaint should be sustained, and it is so ordered.