**PACIFIC TOWBOAT & SALVAGE CO., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 78–1985.

United States Court of Appeals, Ninth Circuit.

May 22, 1980.

Boris H. Lakusta, San Francisco, Cal., for petitioner.

---

2. Furthermore, judicial economy dictates that we explore the effect of *Yeshiva* on this case.

Denis M. O'Brien, I.C.C., Washington, D. C., for respondents; Gerald B. Fleming, Washington, D. C., on brief.

Before TUTTLE,* WALLACE and NELSON, Circuit Judges.

TUTTLE, Circuit Judge:

 This petition to set aside an action of the Interstate Commerce Commission presents a question of the justiciability of a review of an action by the Commission which contained no affirmative order, no sanction, did not change the status of any party, and had no binding effect on anyone.

The Commission action was denominated "Decision and Order, No. W–C–29 Pacific Towboat and Salvage Company—Investigation of Operations." It concludes with the following language:

*It is ordered*:

This investigation proceeding is discontinued.

Decided January 17, 1978.

By the Commission, Division 1, Commissioners Brown, Gresham, and Christian.

H. G. Homme, JR., Acting Secretary.

As stated by the administrative law judge in his report which was adopted by the Commission:

This proceeding was instituted by the Commission's order dated June 9, 1976, in which the Commission on its own motion under Section 304(e) of the Act instituted an investigation concerning the water carrier operations of Pacific Towboat and Salvage Company (PTS) engaging in the transportation of property in interstate or foreign commerce for compensation as a contract carrier by water in violation of Section 309(f) of the Act.[1]

The Acts which are under investigation were not in dispute. As found by the administrative trial judge, they may be stated as follows:

The facts in this case are not in dispute. PTS is a wholly-owned subsidiary of a corporation in Hawaii with its offices located at Long Beach, Calif., holding no authority from this Commission. In the latter part of 1974 and the first part of 1975, PTS transported by water, certain large petroleum separaters, metal scrubbers, and various other steel vessels and tanks for storage of natural gas and petroleum products, from the San Francisco Bay, Calif., area or the Long Beach, Calif., area to Tacoma, Wash. The aforementioned items were transported for the Ralph N. Parsons Company (Parsons), a construction and engineering firm which has a contract with the Atlantic Richfield Corporation (ARCO) to construct ARCO facilities for the processing of crude petroleum and natural gas at Prudhoe Bay, Alaska, which is located in the "north slope" oilfields. At Tacoma, the items transported were joined with other components of the facilities produced by Parsons at Tacoma, and the completed units were transported from Tacoma to Prudhoe Bay by a carrier other than PTS; the latter did not participate in the latter movement. In at least one instance, five months elapsed from the time that PTS transported the components from California to Tacoma and the time that the completed facility was transported to Prudhoe Bay. Upon arrival at Prudhoe Bay, the items were installed by Parsons as a complete facility. Upon being informed by the Interstate Commerce Com-

---

* Honorable Elbert P. Tuttle, Senior United States Circuit Judge, Fifth Circuit, sitting by designation.

1. Section 10921 of Title 49 (formerly Section 309(f) of the Interstate Commerce Act, 49 U.S.C. 909(f)) provides:

Except as provided in this subchapter or another law, a person may provide transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter . . . (iii) [water carrier transportation] . . . of Chapter 105 of this Title . . . only if the person holds the appropriate certificate, permit, or license issued under this subchapter authorizing the transportation or service.

mission that it was looking into the subject transportation, PTS immediately contacted representing counsel to determine the legality of such transportation; advice was received that no authority was required from the Commission. The transportation performed by PTS has now stopped and it has no intention of renewing this operation any time in future. In fact, should the opportunity arise in the future to again commence this operation, PTS would first obtain a determination from the Commission if authority were required. It is the position of PTS that it desires to comply with whatever may be required by the law.

The administrative law judge concluded that the subject transportation was performed by PTS as a contract carrier by water in interstate commerce between California points and Tacoma for compensation and was therefore subject to the Interstate Commerce Act. The ALJ also noted that "the subject transportation has long ceased and respondent has no intention of reviving this operation now or in the future, but an abundance of caution dictates that there is the ever possibility of the operation's being resumed. Thus, a cease and desist order will be entered."

Upon its review, the Commission affirmed "the statement of facts, conclusions, and findings in [the administrative law judge's] initial decision," but stated "we do not believe that the issuance of a cease and desist order is an appropriate remedy." The Commission did, however, include the following statement in its decision:

The subject transportation has long ceased and respondent has no intention of reviving the operation now or in the future. However, respondent is specifically reminded that the transportation performed herein by it from California to Tacoma, Washington was unauthorized and it must seek appropriate authority from the Commission before instituting this type of operation in the future.

The Commission then stated:

*It is ordered* :

This investigation proceeding is discontinued.

PTS contends that the Commission erred in determining that the carriage was interstate as between California and Tacoma, Washington, contending rather that it was transportation from California ports to Alaska and, thus, under the jurisdiction of the Federal Maritime Board by virtue of the Alaska Statehood Act.[2]

■ Neither the United States, as defendant, nor the Interstate Commerce Commission has by separate motion, moved in this Court for a dismissal of the appeal on the ground of lack of jurisdiction because of the absence of a live case or controversy under Article III of the Constitution. On appeal, the United States expressly pretermits a discussion of this question. The ICC raises the case or controversy issue in its brief. Of course, since the jurisdiction of the court under Article III is always open to inquiry upon the court's own motion, we proceed directly to this question.

As we have noted, although the document entered by the ICC following its investigation is headed "decision and order," it is quite doubtful that it is such an order as is contemplated by 28 U.S.C. § 2321(a) which provides as follows:

Except as otherwise provided by an act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the Court of Appeals as provided by and in the manner prescribed in Chapter 158 of this Title.

2. Section 27(b) of the Alaska Statehood Act, 48 U.S.C. Prec. 21, provides:

Nothing contained in this or any other Act shall be construed as depriving the Federal Maritime Board of the exclusive jurisdiction heretofore conferred on it over common carriers engaged in transportation by water between any port in the State of Alaska and other ports in the United States, its Territories or possessions, or as conferring upon the Interstate Commerce Commission jurisdiction over transportation by water between any such ports.

As the Supreme Court has stated in a case in which a final report on valuation for rate making purposes had been made by the Commission in the form of an order:

> The final report on value, like the tentative report, is called an order. But there are many orders of the Commission which are not judicially reviewable under the provision now incorporated in the Urgent Deficiencies Act. *See Proctor & Gamble Co. v. United States,* 225 U.S. 282, 32 S.Ct. 761, 56 L.Ed. 1091; *Hooker v. Knapp,* 225 U.S. 302, 32 S.Ct. 769, 56 L.Ed. 1099; *Lehigh Valley R.R. Co. v. United States,* 243 U.S. 412, 37 S.Ct. 397, 61 L.Ed. 819; *United States v. Illinois Central R.R. Co.,* 244 U.S. 82, 89, 37 S.Ct. 584, 586, 61 L.Ed. 1007; *Delaware & Hudson Co. v. United States,* 266 U.S. 438, 45 S.Ct. 153, 69 L.Ed. 369.[3]

*United States v. Los Angeles & Salt Lake R.R. Co.,* 273 U.S. 299, 309, 47 S.Ct. 413, 414, 71 L.Ed. 651 (1927).

Continuing, the Court said:

> The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing any thing; which does not grant or withhold any authority, privilege or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation.
>
> . . .

273 U.S. at 309, 310, 47 S.Ct. at 414.

The Court thus sought to characterize an order as one which carried into effect one of the results mentioned by it. In *Proctor & Gamble v. United States,* 225 U.S. 282, 32 S.Ct. 761, 56 L.Ed. 1091 (1912), the Court carefully analyzed the provisions of the predecessor Judiciary Act of March 3, 1911, *supra,* to determine what was contemplated by the Congress by the words "order of the Interstate Commerce Commission." In dis-

cussing the words of the subdivision which are applicable here, the Court said:

> Giving to these words their natural significance we think it follows that they confer jurisdiction only to entertain complaints as to *affirmative orders* of the Commission; that is, they give the Court the right to take cognizance when properly made of complaints concerning the legality of orders, rendered by the Commission and confer power to relieve parties in whole or in part from the *duty of obedience* to orders which are found to be illegal. [Emphasis added.]

225 U.S. at 293, 32 S.Ct. at 765.

Throughout the *Proctor & Gamble* opinion, the Court spoke of an order as being in the nature of an "affirmative command of the Commission."

The ICC argument as to the want of jurisdiction of this Court is well stated in the early case of *United States v. Alaska Steamship Co.,* 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808 (1920):

> However convenient it might be to have decided the question of the power of the Commission to require the carriers to comply with an order prescribing bills of lading, this Court "is not empowered to decide moot questions *or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. . ."* [Citations omitted] [Emphasis added.]

253 U.S. at 116, 40 S.Ct. at 449.

Here, we have no question of mootness. Nothing has occurred pending the litigation that has made an issue, once viable, no longer subject to resolution in a manner to affect the parties. We have, instead, the problem of a complete absence of a case or controversy under Article III.

The appellant insists that, in the event that we should determine that this order is not reviewable, we should apply the mootness doctrine by not only dismissing the

---

**3.** The Urgent Deficiencies Act, October 22, 1913, C. 32, 38 Stat. 208, 219 is the predecessor of the present statute cited above, and it was preceded by substantially the same language

by the first section of the Act of June 18, 1910, 36 Stat. 539, C. 309, now Section 207 of the Judiciary Act of March 3, 1911, 36 Stat. 1087, 1148 (hereinafter discussed).

petition here but by vacating the order of the Commission. In doing so, it relies on *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950) and *Board of Regents of the University of Texas System v. New Left Education Project,* 414 U.S. 807, 94 S.Ct. 118, 38 L.Ed.2d 43 (1973). In neither of those cases was the Court faced with the contention that the trial court did not originally have jurisdiction under the case or controversy provisions of the Constitution. The only contention was that pending the appeal in each of the cases, action had been taken by the parties that mooted the case. Here, being faced with a question of original jurisdiction in this Court, we must decide that issue, before we ever face the question of mootness. Upon finding, as we do, that we do not have jurisdiction, our inquiry ends and we lack the power to vacate the order of the ICC.

The Petition is dismissed for want of jurisdiction.